REEVES, Respondent, vs. MIDLAND CASUALTY COMPANY, Appellant.

*October 10, 1919—January 13, 1920.*

*Insurance: Health and accident policy: Construction against insurer: Liability for full indemnity: Notice of illness: Proof of mailing: Sufficiency: Evidence: Presumption as to due course of mails.*

1. In case of doubt or ambiguity the language of an insurance policy should be construed most strongly against the insurer, but such construction cannot be resorted to unless ambiguity exists.
2. A health and accident policy which limited full indemnity to the period during which insured should be necessarily and continuously confined within the house and therein regularly visited by a physician did not render the insurer liable to pay full indemnity for a time when insured, though merely convalescent and unable to go out for his ordinary affairs, nevertheless was able to sit on the porch and to make visits to his doctor.
3. Testimony of insured's physician that he "mailed" the notice of illness to the insurer, as required by the policy, is sufficient proof of mailing, though there was no specific showing that the notice was inclosed in an envelope properly addressed and deposited in the postoffice with the postage prepaid.
4. A presumption arises from proof of mailing of a letter that it was duly received, and this presumption is not conclusively rebutted by the testimony of the addressee that he did not receive it.
5. The evidence in this case is *held* to warrant a finding that the notice of insured's illness, given to the insurer by insured's physician, pursuant to his request, was in compliance with the requirements of the policy.

APPEAL from a judgment of the municipal court of Langlade county: T. W. HOGAN, Judge. *Modified and affirmed.*

This action was brought to recover indemnity upon a health and accident policy issued by the defendant to the plaintiff. The policy was issued August 25, 1916. By the terms of the policy the defendant agreed to pay to the plaintiff full indemnity ($30 per month) "for the period during which the insured shall be necessarily and continuously confined within the house and therein regularly and personally visited by a legally qualified physician, and wholly and continuously disabled and prevented from performing any and every duty pertaining to any business or occupation solely by reason of such illness." It also agreed to pay partial indemnity (one half of the full indemnity) "for the period not exceeding two consecutive months immediately following said confinement, or by reason of non-confining illness, during which the insured shall be regularly and personally attended by such physician, and wholly and continuously disabled and prevented from performing any and every duty pertaining to any business or occupation."

Plaintiff was a farm laborer and resided in Langlade county, Wisconsin. He was taken sick July 24, 1917, and for a time was confined within the house and was therein regularly and personally visited and attended by Dr. Westphal of Polar, Wisconsin. About the middle of August the plaintiff was able to sit out on his porch a great deal and frequently drove to the doctor's office, a distance of four miles, to be treated.

The case was tried before a jury, and a special verdict was returned in which it was found (a) that plaintiff was wholly and continuously disabled and prevented from performing any and every duty pertaining to his business and occupation for a period of at least six months; (b) that plaintiff was necessarily and continuously confined within his house twenty-six weeks and three days; (c) he was by reason of his illness under the professional care and attendance of a legally qualified physician twenty-six weeks and three days; (d) that his physician continuously visited him

at his home for a period of three weeks between July 22, 1917, and January 22, 1918; (e) that plaintiff, during the first six months of his illness and by reason thereof, visited his physician at the latter's office, at Polar, for a period of twenty-three weeks and three days; (f) that the plaintiff, within ten days after he was taken sick, authorized and directed his attending physician to notify the defendant company of his illness; (g) that the physician did so; and (h) that the notice given contained particulars sufficient to identify the plaintiff.   Upon this verdict judgment was entered for full indemnity for the entire six-months period to which liability was limited by the terms of the policy, from which judgment the defendant appealed.

· *Orlaf Anderson* of Milwaukee, for the appellant.

For the respondent there was a brief by *George J. Bowler* of Sheboygan and *Whiting & Dempsey* of Antigo, and oral argument by *Mr. Bowler.*

The following opinion was filed November 4, 1919:

Owen, J.   Appellant contends that the court erred in rendering judgment for full indemnity for the entire period of six months, because it appears from the verdict that the plaintiff was not confined within the house and therein regularly and personally visited by a legally qualified physician during the six-months period.   While the jury found that he was necessarily and continuously confined within his house for a period of twenty-six weeks and three days, it also found that he visited his physician at the latter's office at Polar, Wisconsin, for twenty-three weeks and three days, and that plaintiff's physician visited him in his house for a period of only three weeks.   There is, therefore, a direct finding that the period during which the plaintiff was treated by a physician in the house existed for only three weeks, and it is contended that from the further finding that plaintiff visited his physician's office at Polar, Wisconsin, for a period of twenty-three weeks and three days it necessarily follows that during such time he was not necessarily and

continuously confined within the house during such period. The trial court gave this provision of the policy a liberal construction, his view as to its proper meaning being revealed in his instruction to the jury, wherein he said:

"I instruct you that the phrase 'necessarily and continuously confined within the house' means such time as plaintiff was confined within the house, and for such time as plaintiff was disabled by reason of his sickness from departing from his house *for the purpose of attending to the ordinary affairs of life and to resume the ordinary pleasures thereof,* including the times he may be assisted to the porch of his house to enjoy the benefits of fresh air and sunshine as directed by his physician."

It is a familiar rule that in case of doubt or ambiguity the language of an insurance policy should be construed most strongly against the insurer (*Patterson v. Natural Premium M. L. Ins. Co.* 100 Wis. 118, 75 N. W. 980), but it is also well settled that construction cannot be resorted to unless ambiguity exists. Under the terms of the policy the insured was entitled to full indemnity only for the period during which he was necessarily and continuously confined *within* the house and *therein* regularly and personally visited by a legally qualified physician. It would seem that the company *ex industria* employed language which could leave no doubt as to the period during which the insured should be entitled to full indemnity. He must not only be confined *within* the house but he must be *therein* regularly and personally treated by a physician. Treatment at the physician's office was excluded as plainly and as definitely as it well could be. We speculate in vain for language that would more surely limit the period during which the insured was entitled to full indemnity to that period during which he was confined within the four walls of his house and regularly and personally treated by a physician therein. To our minds the language employed is not capable of a double meaning. It cannot be reasonably construed to include time around the house, about the house, or when he

was making trips to Polar and receiving treatment in the physician's office.

The purpose of the company to thus limit its liability for full indemnity is made more plain when we consider the immediately following provision in the policy for partial indemnity. Under that provision the insured is entitled to partial indemnity "for the period not exceeding two consecutive months immediately following said confinement, during which the insured shall be regularly and personally attended by such physician, and wholly and continuously disabled and prevented from performing any and every duty pertaining to any business or occupation." Now the question arises, If the period during which the insured was necessarily and continuously confined within his house and therein regularly treated by a physician does not mark the limit of time during which he was entitled to full indemnity, then, under the terms of the policy, when did the term, during which he was entitled to full indemnity, end, and when did the partial indemnity period begin? It will be noticed that in order to entitle him to either full or partial indemnity he must have been wholly and continuously disabled and prevented from performing any and every duty pertaining to any business or occupation solely by reason of such illness. That condition must be present to entitle him either to full or partial indemnity. It was also necessary, in order for him to recover either full or partial indemnity, that he be regularly and personally attended by a physician. What, then, is the feature which distinguishes the full from the partial indemnity period? Manifestly it is the continuous and necessary confinement within the house and treatment therein by a physician.

The indemnity provisions of the policy recognize two degrees of illness: one, when the insured is so ill that he is confined within his house and is therein treated by his physician; the other, when he has so far recovered that he is

able to be outside the house and to receive treatment from his physician at places other than the house. The purpose of these provisions is not difficult to understand. He who is disposed to malinger will grow weary of his simulations more quickly if, in order to enjoy their fruits, he must confine himself within the four walls of his house. The period of convalescence can be more cheerfully prolonged if one be permitted to enjoy the fresh air and sunshine, walk about his yard, take an occasional walk to the neighbors, and make calls at his physician's office. It was for the purpose of discouraging the protraction of illness for the purpose of securing the fruits of the insurance contract that the company limited full indemnity to the period of actual confinement within the house. This may not be a desirable contract, but the company had the right to prescribe the period during which it should be liable for indemnity, as well as the amount thereof. If the contract did not appeal to plaintiff, he was under no obligations to purchase it. The premium rate was no doubt fixed by the character of the liability assumed and, the company having made use of plain and unambiguous words prescribing the period of full liability, the court should not substitute another and different contract for the parties. The court was in error in ordering judgment upon the theory that the plaintiff was entitled to the full indemnity during the six-months period. Judgment should have been ordered for full indemnity for the period of three weeks and partial indemnity for the remainder of the six-months period.

The policy also contains this provision: "Written notice of injury or of sickness on which claim may be based must be given to the company within twenty days after the date of the accident causing such injury or within ten days after the commencement of disability from such sickness." It is claimed by the company that written notice of sickness was not given. The plaintiff testified that about the 25th

of July he instructed Dr. Westphal to notify the *Midland Casualty Company* that he was ill.   Dr. Westphal testified: "I gave written notice to the *Midland Casualty Company* of plaintiff's illness on July 25, 1917.   *Reeves* gave me his papers and asked me to complete them for him.   The notice was made out on blanks furnished by the company.   I filled out and signed such notice.   I mailed it to the *Midland Casualty Company* at Green Bay, Wisconsin."   The president of the company testified that the defendant received no notice of sickness from the plaintiff to which Dr. Westphal testified.   Unless the notice testified to by Dr. Westphal was given, the company did not receive notice of plaintiff's sickness within the time required by the provisions of the policy.   The question is whether upon this state of the testimony the jury was warranted in finding that proper notice had been given.

It is contended that the bare testimony of Dr. Westphal to the effect that he mailed the notice to the company at Green Bay, Wisconsin, is not sufficient proof of mailing, and that in order to constitute proof of mailing it was essential on the part of the plaintiff to specifically show that the notice was inclosed in an envelope or wrapper, addressed to the defendant, and was deposited in the postoffice with the postage thereon duly paid.   This contention is no doubt supported by much authority, but it seems to us that this rule is too technical to be adopted by a court as an original proposition in this day.   Such a rule dignifies form rather than substance.   The term "mailing" or "mailed" has a well understood meaning.   If it is said to a business man, "I mailed a letter," he assumes that the letter was inclosed in an envelope, properly addressed, deposited in the post-office with the postage duly prepaid, and he will act upon that assumption in conducting the most important business transactions.   When the same expression comes from the mouth of a witness in a court of justice, why should the

court hesitate to accord to the expression its usual and customary significance?—especially in view of the fact that the opposing party has the right to cross-examine him with respect to every detail essential to constitute a complete mailing. We hold that the testimony of Dr. Westphal to the effect that he mailed the notice to the company at Green Bay is sufficient proof of mailing. From the proof of mailing a presumption arises that it was received by the company. True, the president of the company testified that the notice was not received. We do not understand, however, that such testimony operates as a conclusive rebuttal of the presumption arising from the proof of mailing. The presumption, with the evidence of the president of the company, made an issue for the determination of the jury, and upon such evidence the jury found that the notice was given. Its finding in this respect cannot be disturbed.

Another question arises as to whether the proof shows that the notice was sufficient to advise the company of plaintiff's sickness. The policy does not require this notice to contain any specific information. It simply states that the written notice of injury or of sickness on which claim may be based must be given to the company within twenty days after the commencement of disability from such sickness. Dr. Westphal testified that the notice was made out on blanks furnished by the company, that the blanks were filled out by him, and that he signed such notice. We hold the evidence ample to warrant the jury in finding that the notice given complied with the requirements of the policy.

Judgment was ordered and rendered for $180 with interest thereon from the 29th day of January, 1918, amounting to $189.40. This included full indemnity for the full six-months period. Plaintiff should have recovered full indemnity, or $30 per month, for the period of three weeks, or seven-tenths of a month, and half indemnity, or $15 per month, for the remainder of the six-months period, or for

five and three-tenths months, which amounts to $100.50, with interest thereon from the 29th day of January, 1918, amounting in all to $105.50.

*By the Court.*—The judgment is modified by substituting $105.50 for $189.49, and as so modified is affirmed.

The appellant moved for a rehearing, and the following opinion was filed January 13, 1920:

PER CURIAM. Upon motion for rehearing appellant's attorney calls our attention to material provisions of the policy which were overlooked in computing the amount for which plaintiff should have judgment. The policy provides that no indemnity for sickness disability shall be paid for the first five days of illness and that partial indemnity shall be paid for a period of not exceeding two consecutive months. Therefore, plaintiff was not entitled to indemnity for the first five days of his sickness, nor was he entitled to indemnity for a longer period than two months. He is therefore entitled to full indemnity for the three-weeks period less five days, and partial indemnity for the remainder of the two-months period, amounting in the whole to $47.50.

The motion for rehearing is denied. The mandate herein is modified to read: The judgment appealed from is modified by substituting $47.50 for $189.49, and as so modified is affirmed. No costs allowed on motion for rehearing.