18

BUSKE, by guardian, Appellant, vs. FEDERAL CASUALTY COMPANY, Respondent.

*October 8—November 5, 1929.*

For the appellant there was a brief by *Husting & Husting* of Fond du Lac, and oral argument by *B. A. Husting*.

*John A. Dorney* of Milwaukee, for the respondent.

OWEN, J.  By the terms of a health and accident indemnity policy, issued by the defendant to the plaintiff, it was provided that "for the period during which the insured shall be necessarily and continuously confined within the house and therein regularly and personally visited by a legally qualified physician, and wholly and continuously disabled and prevented from performing any and every duty pertaining to his business or occupation, the company will pay illness indemnity at the rate per month specified in Part I" ($80 per month), or, "for the period, not exceeding three consecutive months, immediately following said confinement, or by reason of non-confining illness, during which the insured shall be regularly and personally attended by such physician and wholly and continuously disabled and prevented from performing any and every duty pertaining to his business or occupation, the company will pay one half of said monthly illness indemnity."  The policy became effective February 17, 1925.

On October 17, 1925, the insured became ill and was duly adjudged insane on October 20, 1925, and committed to the Northern Hospital for the Insane at Winnebago, Wisconsin, where she was confined until August, 1927. During such time she was personally visited and attended by a legally qualified physician, and was wholly and continuously disabled from performing any and all duties pertaining to her business or occupation by reason of such illness.  During her confinement at such hospital she was customarily taken into the open air on the grounds and

within the lands and premises of the institution, and at no time was she confined to her bed or within the building by reason of her physical incapacity.

The trial court held that her illness was a non-confining illness under the terms of the policy and limited her recovery to the period of three months. Upon this appeal plaintiff contends that the recovery should have been for full indemnity. An exactly similar policy was construed in *Reeves v. Midland Cas. Co.* 170 Wis. 370, 174 N. W. 475, and it was there held that in order to entitle the insured to recover full indemnity, necessary and continuous confinement within the four walls of the house was required. It was there pointed out that the policy itself prescribed two degrees of illness, and that full indemnity could be recovered only during the time that the insured was necessarily and continuously confined within the four walls of the house and therein regularly attended by a physician. The classification thus attempted is of degrees of sickness, and the confinement therein referred to is, plainly, confinement induced by the character and degree of sickness; a physical incapacity to leave the house resulting directly from the sickness.

In this case there was no such physical incapacity. The insured was at all times physically capable of leaving the house and moving about as she pleased. Her illness imposed no restraint upon her physical abilities. While it is true that her illness resulted in complete inability to pursue her usual occupation, it is not such a disability as is prescribed by the policy to entitle her to full indemnity. The policy sets up a physical and not a mental disability. The policy plainly contemplates a confinement to the house as the result of physical disability induced by sickness to entitle the insured to full indemnity.

In this case the confinement suffered by the insured was not a confinement due to natural causes. It was a legal

rather than a natural confinement. Her confinement was not to the house but to the premises of the institution. While the extent of her disability to pursue her usual occupation could not have been greater as the result of physical disability, nevertheless her disability does not fall within the contractual classification which entitles her to full indemnity. It plainly falls within that provision of the contract providing for partial indemnity.

Neither is her situation comparable to that of a tuberculosis patient who, though confined in bed, lives in the open air. Such a situation presents a case of complete physical disability, and might very well be held to respond to the spirit of the requirements set up by the policy for full indemnity. We mention this not for the purpose of deciding that question, but to intimate that any conclusion with reference to it has little if any influence upon the situation here under consideration.

The policy also contains this provision: "For the period, not exceeding three months, during which the insured shall be necessarily and continuously confined within a licensed hospital as a direct result of such illness, . . . the company will add twenty-five per cent. to the monthly indemnity otherwise payable under Part I." The lower court permitted recovery under this provision. The defendant and respondent filed a notice for a review of this holding. It is affirmed. The term "licensed hospital" has no significance in this state, as we have no licensed hospitals. To give any effect to this provision in this state it must be held to contemplate any hospital. The state hospital for the insane at Winnebago is a hospital. While the provision relates to the period "during which the insured shall be necessarily and continuously confined within a licensed hospital," being the same language found in the provision providing for full indemnity, it is not to be construed so strictly, because there is no attempt to distinguish between confinement within the hospital and

about the hospital. This provision is construed to include the time that the insured is necessarily and continuously confined within or about the hospital for the purposes of receiving hospital treatment, even though during such time, by reason of convalescence or the inherent nature of the sickness, the insured is not physically incapacitated from going out of the hospital.

*By the Court.*—Judgment affirmed.

FOWLER, J., took no part.