## MacFARLANE v. PACIFIC MUT. LIFE INS. CO.

No. 10397.

United States Court of Appeals
Seventh Circuit.

Nov. 9, 1951.

Rehearing Denied Nov. 28, 1951.

Cleland P. Fisher, Janesville, Wis., for appellant.

Leon B. Lamfrom, A. J. Engelhard, Milwaukee, Wis., for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

This action was instituted by the plaintiff to recover damages upon a breach and repudiation of a certain health and accident insurance policy issued by defendant. The district court, which heard the case without a jury, upon its findings of fact and conclusions of law entered judgment awarding plaintiff the sum of $109.68 damages, interest and costs. From this judgment plaintiff appeals.

Plaintiff, on September 14, 1946, while the policy was in force, contracted poliomyelitis (polio). As a result, his legs were paralyzed to such an extent that they are practically useless as a means of locomotion. Defendant paid plaintiff $200 per month from the inception of his illness through the month of July, 1947, when it denied further liability.

The pertinent portions of the policy are contained in Part I, paragraphs (a) and (b), each of which is entitled "The Sickness Monthly Indemnity." Paragraph (a), designated as the "House Confinement" clause, provides a lifetime monthly income of $200 for a sickness "which commences while this Policy is in force, throughout which the Insured by reason of such sickness [is] wholly, necessarily and continuously disabled and prevented from performing every duty pertaining to his occupation and is necessarily, strictly and continuously confined within the house and therein regularly visited and attended by a legally qualified physician or surgeon other than himself." Paragraph (b), designated as a "Non-House Confinement" clause, provides for the same monthly income "not exceeding three months, which commences while this policy is in force, throughout which the insured, although not confined within the house, is by reason of such sickness wholly, necessarily and continuously disabled and prevented from performing every duty pertaining to his occupation and is necessarily under the regular care and attendance of a legally qualified physician or surgeon other than himself."

Thus, paragraph (a) imposes three conditions which the insured (plaintiff) must meet as a prerequisite to his right to recover. He must have been (1) wholly,

necessarily and continuously disabled and prevented from performing every duty pertaining to his occupation, (2) necessarily, strictly and continuously confined within the house and (3) therein reguarly visited and attended by a legally qualified physician or surgeon other than himself. Paragraph (b) imposes two conditions. He must be (1) wholly, necessarily and continuously disabled and prevented from performing every duty pertaining to his occupation and (2) necessarily under the regular care and attendance of a legally qualified physician or surgeon other than himself.

Plaintiff's cause of action is predicated upon paragraph (a), and it is conceded that he met the first requirement; in fact, the court found that plaintiff "was at all times between September 14, 1946, and August 7, 1947, 'wholly, necessarily and continuously disabled and prevented from performing every duty pertaining to his occupation'." As to conditions (2) and (3), the trial court found that the plaintiff, after May 8, 1947, was no longer "necessarily, strictly and continuously confined within the house and therein regularly visited and attended by a legally qualified physician or surgeon other than himself." The court, having found the issues relative to these two conditions adversely to the plaintiff, denied recovery.[1]

Inasmuch as the court found and it is conceded that plaintiff, as a result of his illness, remains totally and permanently disabled, we see no point in a detailed description of his physical condition.

Nor do we think it important to relate in detail the findings of the court concerning plaintiff's activities subsequent to May 8, 1947. A brief resume will suffice. Commencing on that date, plaintiff sat on the porch of his home, and on June 6, 1947, purchased an Oldsmobile, so converted as to permit it to be operated by hand controls, thus making the use of the driver's legs unnecessary in its operation and control. Thereafter, he frequently operated the car for business, pleasure and for the accommodation of his family. He would wheel himself in a wheelchair from his house to the driver's seat of the car and pull himself into the car with one hand while holding the wheelchair with the other. After he had thus pulled himself into the car, he was able to operate it efficiently by the use of hand controls. Commencing early in June, 1947, he made trips to places in and about his farm, took his children home from school, made bank deposits by driving up to the bank and having someone deposit the money in the bank, and called on his physician in Janesville. Between June 6, 1947 and the day of the trial, plaintiff made numerous trips away from home, both by auto and by train. In July, 1947, he made a train trip to the Sheltering Arms at Minneapolis, Minnesota, an institution where polio victims were taught to exercise and to use walking sticks, known as "Sister Kenney sticks." Again, in January, 1948, he made a trip to the same place by train. In the same month, he drove his automobile to Appleton and Kaukauna, Wisconsin, on a business trip, stayed one night at a hotel and visited with a cousin on the way home. In March, 1948, he made a trip to Cleveland, Ohio, by train to attend a Game Breeders' Association convention, being absent from home three or four nights and staying at a Cleveland hotel. When the convention ended, he took a trip to Pennsylvania and stayed overnight at two different places. In February, 1949, he made a business and pleasure trip to New York and Florida and was gone fourteen or fifteen days. This trip was made by train and airplane. These are typical of numerous trips which the plaintiff made away from home.

On the day of the trial (January 17, 1951), plaintiff got out of bed and dressed without assistance. After he had dressed, he got into his wheelchair, a man brought his automobile to the back door of his home, plaintiff walked down the steps with the aid of "Sister Kenney sticks" and got into the car. His assistant rolled out the wheelchair and put it in the car. Plaintiff drove the car from Janesville to Madison and got

---

1. Defendant conceded that there was due the plaintiff the sum of $109.68, hence the judgment in that amount. This, however, is irrelevant to the question for decision.

out of the car unassisted. His wife took the wheelchair out of the back seat of the automobile, plaintiff got into it and, with the help of others, made his way to the courtroom.

The principal issue is whether plaintiff since May 8, 1947 was "confined within the house," as that term is used in the policy. In this connection it should be noted that the court not only found that plaintiff was and continues to be totally disabled but further that "he cannot move about or out of his home without the help of others or without artificial aids, and would be confined to his home if such assistance were not available."

Plaintiff makes an appealing argument, not entirely without reason and logic, that a liberal construction of the policy, to which he is entitled, requires a holding that he was and is house confined. This argument rests on the premise that plaintiff because of his illness was without the physical ability to leave the house on his own, that is, that he was unable to do so without assistance and without the aids which he employed.

The district court having acquired jurisdiction of the case by reason of diversity of citizenship, the law of the State of Wisconsin is controlling. Two decisions of the Supreme Court of that State are relied upon by the defendant as squarely in point. Reeves v. Midland Casualty Co., 170 Wis. 370, 174 N.W. 475, 959, and Buske v. Federal Casualty Co., 200 Wis. 18, 227 N.W. 239. And while the record does not specifically show, we assume that the district court in deciding the issues adversely to the plaintiff agreed with the defendant. After giving these cases careful study, we think there is no escape from such a conclusion.

In each of these cases the court had before it a health and·accident policy and construed a provision almost identical with that here under consideration. Relative thereto, the court in the Reeves case, 170 Wis. at page 373, 174 N.W. at page 476, stated: "Under the terms of the policy the insured was entitled to full indemnity only for the period during which he was necessarily and continuously confined *within*

the house, and *therein* regularly and personally visited by a legally qualified physician. * * * He must not only be confined *within* the house but he must be *therein* regularly and personally treated by a physician. Treatment at the physician's office was excluded as plainly and as definitely as it well could be. We speculate in vain for language that would more surely limit the period during which the insured was entitled to full indemnity to that period during which he was confined within the four walls of his house, and regularly and personally treated by a physician therein. To our minds the language employed is not capable of a double meaning. It cannot be reasonably construed to include time around the house, about the house, or when he was making trips to Polar and receiving treatment in the physician's office." In the Buske case, the same court reaffirmed its construction of the provision. It stated, 200 Wis. at page 20, 227 N.W. at page 239: "Upon this appeal plaintiff contends that the recovery should have been for full indemnity. An exactly similar policy was construed in Reeves v. Midland Casualty Company, 170 Wis. 370, 174 N.W. 475, and it was there held that, in order to entitle the insured to recover full indemnity, necessary and continuous confinement within the four walls of the house was required. It was there pointed out that the policy itself prescribed two degrees of illness, and that full indemnity could be recovered only during the time that the insured was necessarily and continuously confined within the four walls of the house, and therein regularly attended by a physician."

It is true, of course, that the facts of those cases are different from those of the instant case, and the plaintiff intimates that if the facts of the present case were before the Wisconsin court it might reach a different result. But we are not permitted to speculate on what the Wisconsin court might hold in some future case. It has quite definitely construed the provision in question and we see no escape from its binding effect.

Moreover, the court found that commencing and after May 8, 1947, plaintiff was not at his house "regularly visited and at-

tended by a legally qualified physician or surgeon." This finding, under the holding in the Reeves case (heretofore quoted), would present an additional obstacle to plaintiff's right to recover.

Plaintiff cites cases from numerous jurisdictions other than Wisconsin, some of which appear to support his theory of construction, but they are of no assistance in view of the holding of the Supreme Court of Wisconsin.

In concluding, we cannot resist the temptation to express our admiration for the remarkable courage and ingenuity displayed by the plaintiff in an attempt at rehabilitation. His rights, however, as well as those of the defendant, must be determined by the contract which the parties made as it has been construed by the State court.

The judgment appealed from is

Affirmed.