298 P.2d 943

**Alfred Lee HARRIS, Plaintiff-Appellant,**

v.

**OLD EQUITY INSURANCE COMPANY, Defendant-Appellee.**

No. 6031.

Supreme Court of New Mexico.

June 29, 1956.

262

R. F. Deacon Arledge, Roy T. Mobley, Lorenzo A. Chavez, Albuquerque, for ap-

pellant.

Shipley & Seller, Alamogordo, for appellee.

KIKER, Justice.

This appeal is from a judgment entered for defendant Old Equity Insurance Company following a motion for summary judgment. Attached to the motion were the deposition of plaintiff and three affidavits from doctors.

The facts, as shown by the motion supported by deposition and affidavits, and by the contract of insurance attached to plaintiff's complaint, are as follows.

On October 11, 1948, plaintiff-appellant, paid to Old Equity Insurance Company of Gary, Indiana, 25¢ and received therefor a contract of insurance protecting him under the conditions set out in the policy against both accident and illness. Beginning on November 11, plaintiff was required to pay premiums of $25 annually if paid annually, $6.50 per quarter if paid quarterly, or $2.25 per month if paid monthly.

There is no dispute that the policy was in effect until May 11, 1952, the date on which Old Equity Insurance Company claims the policy lapsed for nonpayment of premiums.

In February, 1952, plaintiff was stricken with illness and has never been well since that time, and will never be well. The affidavits of the doctors show that he has an

enlarged heart with other complications attendant thereon.

Plaintiff, realizing that he was ill, went to the office of a physician at Tularosa, New Mexico, where he then lived, seeking medical assistance. He has been treated by that physician and by others at El Paso, Texas, at various times, but never in his home. He has always gone to the office of the physician consulted, except for an operation which he had for other trouble about two years after his first heart disability, when he was hospitalized.

For two years before his deposition was given, he had lived with a son at El Paso. He stated that he occasionally tinkers about the yard where he lives, though he can't do much. He undertook to work for another person doing yard work for a period of about three weeks, but was not able to continue.

On the day his deposition was given, he drove his automobile from El Paso to Tularosa, a distance of about 100 miles; as he stated there was no one else to drive him. On other occasions, also, when neither his son nor his son's wife could drive him, he would drive his car from El Paso to Tularosa. He made this trip about once a month, though sometimes there would be a lapse of two months, to check up on a three-acre orchard he owned there and be sure that the man on the place was properly irrigating. He also transacted some other business at Tularosa when there and would occasionally see his Tularosa physician. On most of the trips, the driver would be either his son or his son's wife.

There was no period of time after the first attack of heart difficulty when it can be said that his activities were so restricted that he was "confined within doors and attended therein by a physician", in the meaning of the insurance contract.

Plaintiff wrote to Old Equity Insurance Company on February 27, 1952, notifying it of his illness. He asked for forms to be prepared by himself and his physician "for the total disability payment in part H of your Policy #LM 57.178." On March 22, 1952, plaintiff filed his claim. This claim does not show that plaintiff, during the 30 days since he was stricken, had been confined within doors and attended therein by a physician.

Two paragraphs of the insurance contract are controlling as to plaintiff's rights in this case. They are Part H and Part I of the contract and read as follows:

"Part H.
Confining Disability Benefits
—$50.00 Monthly For Life

If injury or sickness confines the Insured continuously within doors for one day or more and requires regular treatments therein by a legally qualified physician or surgeon, the Company will pay, commencing with the first

such treatment, benefits at the rate of $50.00 per month so long as such confinement remains continuous, provided said injury or sickness causes total disability and necessitates total loss of time.

## "Part I.

### Non-Confining Disability Benefits —$25.00 One Month

If injury or sickness does not confine the Insured continuously within doors, but causes continuous total disability and necessitates total loss of time, the Company will pay, commencing with the first treatment by a legally qualified physician or surgeon, benefits at the rate of $25.00 per month for a maximum period of one month."

As to this policy, an affidavit of plaintiff which was before the trial court states in part:

"I received an education to about the 9th grade, in the school at Mountain Park, New Mexico. When I applied for and received the policy of Insurance on which my suit is based, I was not able to read and understand all of the provisions of the policy, but relied on the statements made by the Insurance Company and its agents. They did not tell me that payment of benefits for disability would require that I be continuously confined within doors, but stated that I would be paid $50 per month for total disability as long as I lived."

After plaintiff applied for payment as above stated, he received from Old Equity Insurance Company a letter dated March 26, 1952, which reads in part as follows:

"Accordingly, we are enclosing herewith our check in the amount of $25.00 in full and complete settlement of this claim as provided for under Part I of Policy #LM 57.178."

It is easy to understand that plaintiff was greatly disappointed when he received the letter from Old Equity Insurance Company advising him that it owed him nothing more than $25; but though we regretfully say so, plaintiff had no other claim than for the $25, because of the facts stated at some length in this case and the parts of the insurance contract which we have quoted. There can be no question, we think, that plaintiff cannot recover in this suit. We cite the case of MacFarlane v. Pacific Mutual Life Insurance Company, 7 Cir., 192 F.2d 193, 29 A.L.R.2d 1403, and the exhaustive note appended thereto at 29 A.L.R.2d 1411. The general rule governing this case is set out at page 1439 of the annotation.

Under such circumstances as we have in this case, we would have to indulge far greater liberality of interpretation than has been done by any court in the country in order to sustain the plaintiff's claim. We must affirm the judgment of the trial court.

It is so ordered.

COMPTON, C. J., and LUJAN, SADLER and McGHEE, JJ., concur.