## Independent Life Insurance Company of America v. Downey.

(Decided June 19, 1934.)

96

WHEELER, WHEELER & SHELBOURNE for appellant.
L. B. ALEXANDER for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

On August 1, 1931, the Independent Life Insurance Company of America issued to Luther L. Downey a life policy for $5,000 which provided for payment to the in-

sured of monthly benefits for disability resulting from disease. One of the provisions related to nonconfining illness, and the other to illness which confined insured continuously within doors. These provisions read:

"The Company will pay, for one day or more, at the rate of Seventy-five [$75.00] Dollars per month, but not exceeding one month for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and which does not confine the Insured continuously within doors, but requires regular medical attention, provided said disease necessitates total disability and total loss of earnings or compensation from such loss of time."

"The Company will pay, for one day or more, at the rate of One Hundred Fifty [$150.00] Dollars per month for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and which confines the Insured continuously within doors and requires regular visits therein by a legally qualified physician, provided said disease necessitates total loss of earnings or compensation from such loss of time."

By indorsements on the policy the disability benefits were made effective from the date of the policy and the company further agreed to pay the monthly benefits so long as the insured lived and suffered disability as therein described.

The insured instituted this action and by his petition, as amended, sought to recover disability benefits at the rate of $75 per month from February 1 to June 9, 1932, amounting to $322.50 for total disability and loss of time resulting from the disease of tuberculosis which did not continuously confine him within doors; and to recover the sum of $150 per month from June 9 to November 1, 1932, amounting in all to the sum of $705 for total disability and loss of time from the disease which continuously confined him within doors. It was further alleged that the insured had furnished the company with proof of his disability and had offered to furnish additional proof as required, but the company had denied all liability under the policy and denied that the policy was of any force or effect.

By answer the company admitted that it issued the policy containing the provisions set out in the petition

but denied the allegations with respect to the disability of the insured. In a second paragraph and in avoidance of liability, it alleged that the policy was issued on an application made in writing which, among other things, represented that the applicant was sound physically and mentally and that his average earnings from the occupation in which he was engaged exceeded the monthly indemnity provided for under the policy to be issued and under all other accident, health, and disability policies then carried by him; that these representations and answers made to questions in the application were material to the risk and were materially considered by the company in passing upon the application; that at the time he made the application and representations the insured was not sound physically and his monthly earnings from the occupation in which he was engaged did not exceed the monthly indemnity payable under this and other accident and disability policies carried by him; that if the true facts had been known to the company it would not have issued the policy nor have accepted the application, nor would any other reputable insurance company, acting upon the usual customs and practice employed by insurance companies, have accepted the application, or assumed the risk.

In a third paragraph it alleged that prior to February 1, 1932, it learned that plaintiff was not sound physically and that his average earnings were less than the monthly indemnity payable under the policy and other accident, health, and disability policies carried by him and declined to accept from him any further premium thereon and that the policy lapsed on the 1st day of February because of nonpayment of premium and became null and void and of no effect after that date.

By amended answer, the company further affirmatively alleged that the written application made by plaintiff contained the following question: "Have you or any member of your family ever had tuberculosis?" The answer made by the insured was: "No." It also pleaded a provision in the application, to which the insured by his answer assented, to the effect that the policy was to be based upon the statements of fact in the application and that the falsity of any statement made with the intention to deceive or that would materially affect the acceptance of the risk or hazard assumed would bar the right to recover on the policy; that

the statement that no member of insured's family had ever had tuberculosis was false and untrue, and in fact Sally Downey, a former wife of Luther Downey, died from tuberculosis on November 17, 1925, and at the time of her death and for a number of years prior thereto she and defendant had lived together as husband and wife and had occupied the same home; that such alleged false statement was made with the intent to deceive it and cause it to issue the policy sued on and does materially affect the risk and hazard assumed by them and that neither it nor any other reputable insurance company acting upon the usual and ordinary custom among insurance companies would have accepted the application or issued the policy.

A second amended answer sets out the provisions of the policy as to how and when premiums should be paid in order to keep the policy in continuous effect, in which it is in part stated:

"If any such premium be unpaid at the office of the company in Nashville, Tennessee, or an agent designated on premium notice in exchange for the company's official renewal receipt, this policy shall terminate on the date such payment is due. The acceptance of any premium on this policy shall be optional with the company without waiving any right of insured as may be provided in part J."

It averred that insured paid the premium on the policy up to February 1, 1932, and on that date tendered to the company the $16 by letter addressed to it at Nashville, Tenn., and that it, in the exercise of its option as set forth in the above-quoted provision, refused same and elected to terminate and avoid the policy as of February 1, 1932; that prior to February 1, it had paid claims to the defendant amounting to $165; and that on that date there were no claims filed with it which were unpaid and it had no notice of any claim of disability upon the part of insured. The amended answer also set out certain provisions of the policy with reference to giving notice and furnishing proof of injuries or sickness and alleged that under these provisions the filing of proof of loss claimed under the policy is a condition precedent to the right of insured to institute action thereon; that it received from the insured, on February 12, a letter requesting an illness blank for illness alleged in the letter to have been contracted some time before the date the premium was due and that it

refused to furnish such proof blanks because at the time it had, in the exercise of its option, declined to accept the premium due February 1 and had terminated and canceled the policy; and that no proof of any kind relative to the disability sought to be recovered had been filed with it, and therefore the action was prematurely brought.

The issues were completed by replies to the answer as amended, and trial before a jury resulted in a verdict and judgment in favor of the plaintiff for the sum sued for amounting to $1,027.50 with interest on the various installments from the due date, and the company is appealing.

At the close of all the evidence appellee tendered and offered to file an amended petition to conform to the proof, wherein it is alleged that he became totally disabled on January 30, 1932, and that the petition by mistake of the draftsman erroneously alleged that he became disabled on the 1st day of February and sought recovery accordingly. The court refused to permit this amended petition to be filed, but permitted it to be made a part of the record.

The grounds urged for reversal as set forth in appellant's brief are, in substance: (1) That the court erred in refusing to give instruction A, which directed a verdict for appellant, (2) that the court erred in refusing to give instructions X, Y, and Z offered by appellant, (3) that the verdict is not supported by evidence and is contrary to instructions, (4) because of refusal of the court to render judgment for defendants notwithstanding the verdict, and (5) because of improper argument on part of counsel for appellee.

A consideration of the grounds urged for reversal call for a review of the evidence. Appellee testified that he became ill on January 14, 1932, and on the 15th went to the office of Dr. Shemwell but found he was not in, so went to see Dr. W. B. Willingham. He continued to work up until January 30, when Dr. Willingham informed him that he had tuberculosis; that he had not been able to do any work since that date; that on the morning of February 1 he mailed a letter directed to the Independent Life Insurance Company at Nashville, Tenn., containing a check to cover the premium due on that date; that on February 5 he notified the company of his condition and requested them to send blanks to

make proof of disability; that on February 10 he received a letter from the company returning his check. This letter appears in evidence and is dated February 5. He introduced in evidence an envelope in which he testified the letter came which bears the Nashville postmark as of date February 9. He again wrote the company on February 12 and received a letter from them dated February 13, 1932, stating that the policy lapsed February 1 and the claims which he made during the life of the policy for disability had been paid in full. It was further stated in the letter that the company had made thorough investigation and was convinced that appellee was overinsured and felt that he should return half of the amount paid because of his recent disability. He testified that he had been married three times and his first two wives were dead. When asked with reference to his answer in the application as to whether he or any member of his family ever had tuberculosis, he stated that he told the agent, Mr. Carlton, who took the application, that a former wife died with tuberculosis November 17, 1925, and the agent told him the question referred only to blood relatives and wrote the answer in the application; that he had previously made application to the same agent for insurance in the Atlas Dixie Insurance Company and told him that he had a wife to die with tuberculosis, and the agent then said that that question referred only to blood relatives. He testified that from January 30 to June 9 he was under the care and treatment of his physician and, while unable to work, was permitted to go about; that after June 9 he was regularly attended by the physician and was confined to his home, except that the doctor requested that he rest and sleep in the open air and sunlight and that he take short walks, which he did.

Dr. Willingham testified that appellee consulted him once or twice before January 30, and on that date Dr. Shemwell, a tuberculosis specialist, made an X-ray which showed scar tissue on the lungs and clearly indicated that appellee was suffering from tuberculosis; that from and after that date appellee was unable to perform any labor because of the disease. He fully corroborated appellee as to the extent and duration of the disability. There is evidence that a letter mailed at the time appellee testified he mailed his check for the premium would reach Nashville in time to be distributed between 6 and 7 o'clock that evening.

The officer or agent for the company to whom the letter was referred testified that it did not come to him until two or three days later. The letter from the company to appellee bearing date February 5, 1932, reads:

"We are just in receipt of your nice letter of February 1st, the tone of which we greatly appreciate by reason of the fact that you realize our devotion to promptness and fairness in settlement of claims.

"It is with regret that it becomes necessary to return your check in payment of premium on the policy you carried with us, but according to our records you carry an equal amount of Accident and Health insurance with another company which gives you a total of at least $300.00 per month in case of accident or illness and considerably more if you are confined to a hospital.

"In view of present conditions, we feel that the maximum amount of insurance these policies would provide amounts to more each month than your net earnings from your regular business. It is not considered good business to have anyone insured against loss of earnings by reason of loss of time for an amount that would equal or exceed his or her earnings.

"We feel sure your best judgment will tell you whether or not we are fair in our dealings with you.

"If there is any misunderstanding on our part or if we are mistaken, we will be glad to reconsider the matter if you are further interested."

This letter which is found in the record shows that there has been an erasure and the figure 5 inserted in the date. There has also been a like erasure on the carbon copy of the letter which is introduced in evidence and the figure 5 has been inserted with a pencil.

R. L. Montgomery, who qualified as an expert, testified that there has been an erasure in the date of the letter dated February 5, 1932. After testifying that the X-ray pictures show scar tissue on the lungs, Dr. Willingham was asked on cross-examination how long in his judgment insured's lungs had been infected with the disease of tuberculosis, to which he replied: "It is hard to say. You can get scar tissue very early in some lungs but we usually figure it takes several months

to form scar tissue in tubercular lungs." He was asked: "About how long as you recall from the picture?" He replied: "Six months or a year, something like that. It might be longer and it might be shorter."

Appellee testified that he was operated on for hemorrhoids about November 13, 1931, and did not know or discover that he had hemorrhoids until the 9th or 10th of that month.

Dr. J. W. Handly, medical director for the company, testified that if he had known that a wife of Mr. Downey died of tuberculosis and that he lived with her for a number of years prior to her death, he would not have accepted the application or permitted the company to issue the policy without a thorough examination of the insured, but he did not know what other companies would have done in the circumstances; that he had no information that insured's wife had died with tuberculosis. With reference to the statement of insured that he had an operation for hemorrhoids in November, 1931, the doctor was asked whether in his judgment and opinion the insured was afflicted with hemorrhoids in August, 1931, he replied: "I would say it is quite possible that he was."

From the history of Mr. Downey's case and the evidence as to the condition disclosed by the X-ray picture, he gave as his opinion that the disease existed in August, 1931. C. L. Carlton testified that he took insured's application for the policy and wrote the answers to the questions; that Mr. Downey gave him the information contained in the answers and he recorded the answers as they were made to him; that Mr. Downey did not tell him that a former wife died of tuberculosis in November, 1925, and he knew nothing about it until a few days before the trial. L. T. Lindsey, the local agent for the company, testified that he first learned that a former wife of insured died of tuberculosis in 1925 when the application for the insurance was written. When asked to tell how he learned about it, he replied:

"He was asked if any of his people had tuberculosis or had died with it. The best I remember I was sitting over at my desk and him and Mr. Carlton were sitting over at another desk and he wanted to know if that had anything to do with blood rela-

tives, and they called me as a witness, and said, 'No it did not have.' " .

He was asked if Downey said anything at the time about his wife having died with tuberculosis, and he replied:

"It seems to me he did, I won't be positive, because they explained that she was not a blood relative."

He further testified that Mr. Carlton was the state manager for the company at that time.

J. L. McDaniel, manager of the company's health and accident department, when asked as to when he received the check for the premium due February 1, said:

"I would say it was two or three days later, the second or third of February and as he remembered it was a cashier's check payable to the company."

He testified that there was evidently an erasure in the date of the letter, but he did not know who made the erasure; that the check was returned to Mr. Downey with that letter. In explaining why the check was returned, he stated that one reason not explained in the letter was that the company felt it had been imposed upon by a claim made by insured when he had hemorrhoids, but it was decided to pay the claim and not continue to carry him as a risk.

With reference to his earnings, insured testified that from January, 1931, to January, 1932, he earned more than $4,000 and went into detail as to the items making up this sum.

In support of the first ground assigned for reversal, it is urged that the premium due on February 1 was not paid when due and that the policy lapsed. While there is evidence for the company indicating that according to the usual course of mail delivery, the letter containing the premium would not have been received until the 2d of February, it appears that it reached Nashville in time to have been placed in the company's box early in the evening of February 1, and it was possible for the company to have received it on that date. While it is alleged in appellant's original answer that the policy lapsed for nonpayment of premium on February 1, 1932, it is further alleged in the second amended answer that the premium was tendered to the com-

pany by mail on February 1, and that under the quoted provision of the policy, it, in the exercise of its option, refused same and elected to terminate the policy. Furthermore, in a letter dated February 5 attached to the premium check returned to appellee, the reason assigned for returning the check was that appellee was overinsured; and the company's envelope in which this letter was mailed shows that it was placed in the post office in Nashville on February 9. The postmark on this envelope and appellee's evidence that he notified the company of his disability by a letter of February 5 render significant the evidence as to the erasure and change in the date of the company's letter.

Under the allegations of the second amended answer and the proof, the contention that appellant was entitled to a directed verdict on the theory that the policy lapsed for nonpayment of premium is not sustained.

As a second ground assigned in support of the argument that a peremptory instruction should have been given, it is argued that the policy was void because of the falsity of statements in the application as set forth in appellant's answer as amended. As to this ground, it is first argued that the representation that insured was in sound health physically and mentally at the time the application was made was untrue, and that the disease from which insured was disabled originated prior to that date. Appellee testified that he was in good health at that time. While the company physician gave as his opinion that the disease existed at the time the application was made, the evidence of appellee's physician indicates that it might have originated after that time. To say the least, there was a conflict of evidence and an issue was made which should have been and was submitted to the jury under proper instructions.

A third reason why an instruction directing a verdict for appellant should have been given is that appellee failed to furnish proof as required under the terms of the policy. While appellee did not make formal proof in conformity with the provisions of the policy, the evidence shows that he gave it notice of his disability and asked that he be furnished blanks for making proof. The company refused to furnish blanks and denied all liability under the policy. It is an established rule that where the insurer denies liability under a disability policy without requesting any or fur-

ther proof, the proof of disability is waived. John Hancock Mutual Life Insurance Co. v. Cave, 240 Ky. 56, 40 S. W. (2d) 1004, 79 A. L. R. 848; Fidelity & Casualty Co. of N. Y. v. Hart, 142 Ky. 25, 133 S. W. 996; Southern Life Insurance Co. v. Hazard, 148 Ky. 465, 146 S. W. 1107.

Instruction X offered by appellant authorized a finding for it if the jury believed from the evidence that the quarterly premium due February 1, 1932, was unpaid. What we have said with reference to appellant's pleading clearly indicates that the court properly refused to give this instruction; and furthermore under all the proven facts and circumstances it is apparent that appellant was not prejudiced by the court's ruling with respect to this instruction.

In instruction Y it is stated that appellant, under the terms of the policy, had a right to receive or reject the premium due February 1, 1932, and mailed to appellant by appellee in a letter dated February 1, and authorized a finding for the company if the defendant returned the check tendered in payment of the premium. It is unnecessary to enter into a discussion concerning this provision in the policy further than to say that it did not authorize a termination of the policy after liability attached under the disability provision. There is evidence that appellee did become totally disabled before the premium was due, and under a proper instruction the jury so found.

Instruction Z offered by appellant was to the effect that it was the duty of appellee to give written notice within 10 days from January 30, 1932, of his claim for disability and within 90 days thereafter to furnish proof as to the character and extent of the disability upon which the claim was made, and authorized a finding for appellant if the jury believed from the evidence that appellee failed to give such written notice or proof of claim, either or both.

The question as to giving notice in the form and manner required under the terms of the policy was properly submitted to a jury under another instruction, and as hereinbefore indicated, proof of disability was waived by the company.

Some question is made about the instructions given, but an examination reveals that the criticisms are not well founded, since they fairly submitted to the jury the issues made by pleading and proof. In this connection,

however, it might be said with reference to argument that appellee in any event was only entitled to recovery for nonconfining illness because by his own evidence it is shown that he took short walks and remained out of doors after June 9; however, it is manifest from the evidence that he was continuously confined after that date as a result of his illness and only went out into the air and sun under the directions of his physician as a part of the treatment for the disease. This, if true, was to all intents and purposes confinement within doors within the meaning of the terms of the policy.

The basis for argument that the court erred in overruling appellant's motion for a judgment notwithstanding the verdict is that the petition as amended only sought to recover disability from February 1 and alleged that the disease began as of that date and that the instruction authorized the finding of the jury that the disability began as of January 30, 1932. Appellee tendered and offered to file an amended petition conforming to the evidence and alleging that the disability began January 30, 1932. Under the proof, the court erred in refusing to permit the amended petition to be filed. The instruction was authorized by the proof; it is therefore apparent that appellant was not prejudiced by the court's refusal to sustain the motion.

As appears in the bill of exceptions, counsel for appellee in his closing argument said:

"I want to say to you my friends, and especially to my friends who own stock in the Income Life Insurance Company that the Independent Life Insurance Company changed the date on this letter but Downey did not."

It is argued by counsel for appellant that this argument was improper and prejudicial and the defendant objected at the time the statement was made and moved the court to discharge the jury and continue the case. The question as to the erasure or change in the date of the letter introduced in evidence was a matter for legitimate argument. Reference to friends who owned stock in an insurance company was, so far as the record discloses, unwarranted and improper; however, it is beyond the realm of sound reasoning to conclude that a jury of sensible men would be prejudiced or swayed by this statement made by counsel, or that it had any effect in determining the verdict.

Judgment affirmed.