## Mutual Benefit Health & Accident Association v. Burrow's Executrix.
(Decided Dec. 11, 1934.)

BRUCE & BULLITT, D. L. STREET and E. J. FELTS for appellant.

COLEMAN TAYLOR for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

The executrix of the estate of D. E. Burrow brought this action to recover of the Mutual Benefit Health & Accident Association on a health and accident policy issued to him for a paid premium. It contains these provisions:

"Part I. Confining Illness Two Hundred
Dollars Per Month for Life.

"The Association will pay, for one day or more, at the rate of Two Hundred ($200.00) Dollars per month for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and which confined the Insured continuously within doors and requires regular visits therein by legally qualified physician; provided said disease necessitates total disability and total loss of time.

"Part J. Non-Confining Illness One Hundred
Dollars Per Month.

"The association will pay, for one day or more, at the rate of One Hundred ($100.00) Dollars per month, but not exceeding one month, for disability resulting from disease, the cause of which originates more than thirty days after the date of this policy, and which does not confine the Insured continuously within doors but requires regular medical attention; provided said disease necessitates total disability and total loss of time."

Dr. Burrow was 56 years of age, a practicing physician, residing at Russellville, Ky. On May 28 or 30, 1933, he was paralyzed from a cerebral hemorrhage to such an extent that he could not walk or use his left arm and leg. Thereafter he was unable to attend to any duties of a physician; he was confined to his home

about 3 weeks; the indoor confinement caused him to become very nervous and suffer from loss of sleep; his blood pressure would go up some ten or fifteen points. Dr. S. P. Alderson prescribed as a part of the treatment that he should get out of the house, get fresh air and sunshine, mingle with friends and get his mind off of himself; suggested that his electric machine be brought up from the office and that his wife give him auto-condensation treatment—a treatment with electricity for the nerves and particularly high blood pressure. Remaining indoors caused him to worry and brood over his condition; elevated his blood pressure until it reached around 220. The getting out of his home caused his blood pressure to run from 165 to 185. His physician advised him to play cards to divert his attention from his trouble. When in health, Dr. Burrow played golf, and, after he was paralyzed, his physician advised him to go to the golf course, or to town, or to Gorrell's office and spend a portion of each day to divert his attention from his ailment.

Acting on this advice, very nearly every day in an automobile operated by his wife he would go to the golf course, spend about two hours in the morning and two in the afternoon; occasionally played cards at Gorrell's office, and on other days went riding in an automobile with his wife or other members of his family. On one occasion at his invitation he accompanied his physician to see Kirkpatrick, who was very much interested in golf, and who had served as an officer with Dr. Burrow in the golf club. On that occasion the physician whom he accompanied to the Kirkpatrick home examined Mrs. Kirkpatrick and decided on giving a prescription, and he asked Dr. Burrow to call over the phone the prescription to the drug store. Dr. Burrow on another occasion was called to see Vernon Price's wife, the effect of which the physician of Dr. Burrow describes thus: "He was torn all to pieces and in a nervous state and required to take a tablet so he could sleep." In the opinion of his physician, Dr. Burrow was not, at the time of the trial, able to do anything at all pertaining to his profession. Before he was paralyzed, Dr. Burrow had given West and Kirkpatrick, respectively, a prescription addressed to a drug store in Russellville. After the paralytic stroke, West informed the druggist that he needed some tablets he had been taking and had lost the box, and could not have it refilled and requested

the druggist to call Dr. Burrow and ask him to give him the name of the tablets so he could obtain them. The druggist called Dr. Burrow, received the name of the tablets, and wrote the prescription for them on the typewriter. The druggist also filled another prescription for Kirkpatrick. This was the one Dr. Burrow's physician directed him to give by phone to the druggist.

The Mutual Benefit is here arguing that these facts deprive Dr. Burrow's estate of the benefit of the "confining illness" clause of the policy, and, except for a period of twenty days, its claim, if any, is within the "non-confining illness" clause. Under the latter, his illness not confining him "continuously within doors," therefore the total indemnity owing his estate is $233.20, for which it offered to confess judgment.

To sustain its insistence, it cites to us Republic Life & Acc. Ins. Co. v. Gambrell, 248 Ky. 63, 58 S. W. (2d) 219, 220; Equitable Life Assur. Soc. v. Branham, 250 Ky. 472, 63 S. W. (2d) 498; Provident Life & Acc. Ins. Co. v. Harris, 234 Ky. 358, 28 S. W. (2d) 40; Equitable Life Assur. Soc. v. Burns, 254 Ky. 487, 71 S. W. (2d) 1009.

True it is, in the Gambrell Case, the two clauses of the policy here presented were considered by us. We said:

"Under the confining sickness clause, to entitle the insured to indemnity as therein provided, three things must concur: (a) The sickness must be such as confines the insured continuously within doors; (b) require regular visits therein by a regular qualified physican; and (c) the sickness must be such as necessitates total disablity and total loss of time. The nonconfining clause contains the same requirements, except the sickness need not be such as to confine the insured continuously 'within doors.'"

Sustaining the same construction of the identical clauses, it also cites: Lachterman v. Mutual Benefit Health & Accident Ass'n (Mo. App.) 60 S. W. (2d) 646; Mutual Benefit Health & Accident Ass'n v. Ferrell (Ariz.) 27 P. (2d) 519; Sheets v. Farmers' & Merchants' Mutual Life & Cas. Ass'n, 116 Kan. 356, 225 P. 929; Rocci v. Mass. Acc. Co., 222 Mass. 336, 110 N. E. 972, Ann. Cas. 1918C, 529; Richardson v. Inter-

state Business Men's Accident Ass'n, 124 Kan. 685, 261 P. 565; Reeves v. Midland Cas. Co., 170 Wis. 370, 174 N. W. 475, 959; State ex rel. Commonwealth Cas. Co. v. Cox et al., Judges, 322 Mo. 38, 14 S. W. (2d) 600; Dunning v. Mass. Mutual Acc. Ass'n, 99 Me. 390, 59 A. 535; Butcher v. Great Eastern Cas. Co. (Mo. App.) 215 S. W. 494; Olinger .v. Mass. Protective Ass'n, 221 Mo. App. 405, 278 S. W. 86; Liston v. N. Y. Cas. Co., 28 Misc. 240, 58 N. Y. S. 1090; Bishop v. U. S. Cas. Co., 99 App. Div. 530, 91 N. Y. S. 176

The pronouncement in the cases cited from our own as well as those of foreign jurisdictions must be considered in connection with the facts developed in the particular case. Since the Harris, the Branham, and the Gambrell Cases, we have had before us Independent Life Ins. Co. of America v. Downey, 255 Ky. 95, 72 S. W. (2d) 1008, 1013. Applying the facts therein to a like nonconfining illness clause, we said:

> "It might be said with reference to argument that appellee in any event was only entitled to recovery for nonconfining illness because by his own evidence it is shown that he took short walks and remained out of doors after June 9; however, it is manifest from the evidence that he was continuously confined after that date as a result of his illness and only went out into the air and sun under the directions of his physician as a part of the treatment for the disease. This, if true, was to all intents and purposes confinement within doors within the meaning of the terms of the policy."

This conclusion is consistent with those in the Gambrell and Metropolitan Plate Glass & Cas. Ins. Co. v. Hawes' Ex'x, 150 Ky. 52, 149 S. W. 1110, 42 L. R. A. (N. S.) 700, Cases. See Stewart v. Continental Cas. Co., 141 Wash. 213, 250 P. 1084, 49 A. L. R. 960, and annotation.

The evidence showing without contradiction that Dr. Burrow did not remain indoors, and did that in which he engaged on the advice of his physician as a part of the proper and necessary treatment of his illness, the Downey, the Gambrell, and the Hawes Cases are conclusive of the controverted issue in the present one.

Wherefore the judgment is affirmed.