## Federal Life Ins. Co. v. O'Connell's Committee.

Jan. 31, 1939.

WILLIAM MARSHALL BULLITT, ROBERT LEE BLACKWELL and BRUCE & BULLITT for appellant.

MORTINER VISER, JOHN KILGARRIFF and DAVIS, BOEHL, VISER & MARCUS for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

Cornelius John O'Connell's committee has recovered a judgment for $1,875 against the Federal Life Insurance Company for illness indemnities under the provisions of a health and accident insurance policy which was issued to the insured August 23, 1920. The sole question presented is whether the insured is entitled to illness indemnity under clause (h) or clause (i) of the policy, which read:

"(h) In the event that the Insured shall suffer from and continuously and necessarily be confined within the house by bodily illness, not hereinafter excepted, which begins not less than fifteen days from the date of this policy and while it is in force the Company will pay for one day or more during the first week after the first visit of a legally qualified physician or surgeon other than the Insured, at the rate of * * * Ten * * * Dollars per week, and at the rate of * * * Twenty-Five * * * Dollars per week, thereafter as long as the Insured lives and is by reason of such illness continuously and necessarily confined within the house and therein be regularly visited by a legally qualified physician or surgeon other than the Insured.

"(i) While convalescent, and if following a confining period of total disability and confinement within the house, as specified in paragraph (h) he shall be continuously wholly disabled and prevented from performing any act pertaining to his occupation and continues under the care of a legally qualified physician or surgeon other than Insured, but shall not be necessarily confined within the house, the Company will pay weekly indemnity of * * * Ten * * * Dollars so long as the Insured lives and said nonconfining illness and total disability continues."

It is conceded that Mr. O'Connell has been "con-

tinuously wholly disabled and prevented from performing any act pertaining to his occupation," and has been under the care of a legally qualified physician since June 3, 1931. The insurance company paid weekly indemnities under clause (h) from July 3, 1931, to June 8, 1936, when it refused to make further payments of $25 a week, but offered to pay weekly indemnities of $10 under clause (i), claiming that the insured, though wholly disabled, was no longer necessarily confined within the house by his illness within the meaning of the policy.

Mr. O'Connell became afflicted with paranoia, and on July 3, 1931, was taken to the City View Sanitarium at Nashville, Tennessee, a private institution for the treatment of mental diseases. Nora C. O'Connell was appointed his committee by the Logan County Court on August 22, 1931, and on March 9, 1937, she brought this action to recover $625, the amount of illness indemnities at the weekly rate of $25 alleged to be due. On November 15, 1937, she filed an amended petition increasing the amount sought to be recovered to $1,875, the amount alleged to have accrued up to that date. In its answer, the defendant alleged that the insured had not been continuously or necessarily or at all confined within the house by any bodily illness since June 8, 1936, and that it was not liable under clause (h) of the policy, but owed to the plaintiff only the indemnity for nonconfining illness provided by clause (i) of the policy, and it tendered to plaintiff the amount due under that clause. At the conclusion of the evidence, the court sustained plaintiff's motion for a directed verdict in her favor for the full amount claimed, on the theory that the insured, having been adjudged to be a person of unsound mind and that judgment being still in force and effect, had been continuously and necessarily confined within the house within the meaning of clause (h) of the policy. The insurance company has appealed.

After the judgment was entered, the defendant paid to the plaintiff the sum of $784.56, the amount admitted by it to be due, and the judgment was credited with that amount. The facts are not in dispute. As heretofore stated, appellant concedes that the insured is totally disabled and is being regularly visited by a legally qualified physician. The sole question presented is whether the facts show that he has been confined within

the house since June 8, 1936, within the meaning of clause (h) of the policy. The undisputed facts appear in the deposition of Dr. John W. Stevens, the physician in charge of the City View Sanitarium at Nashville, where the insured has been receiving treatment since July 3, 1931. Dr. Stevens has known the insured during all of that time. He stated that the insured is suffering from paranoia, an incurable mental disease, and was more or less violent when he was admitted to the institution and was kept closely confined. In fact, for several weeks he was kept in his room under lock and key, and thereafter for two or three years was only permitted to leave the building for short walks for exercise, and then was always accompanied by a guard or attendant. His condition improved to such an extent that for several years, at least since June 8, 1936, he has had complete freedom of movement in the building and on the grounds of the sanitarium, and is permitted to spend the entire day, if he so desires, outside the building. The grounds connected with the sanitarium consist of 50 acres of land. He is not accompanied by an attendant and is under no restraint except his promise not to leave the grounds. He frequently goes to Nashville with Dr. Stevens, and on several occasions the doctor has taken him along on fishing trips on the Cumberland river. Dr. Stevens was asked how many hours a day the insured was permitted to go about the premises of the sanitarium, and he said:

"Pretty much like any normal person, that being governed by the state of the weather. He don't get up and get stirring around, ready to go out, before about nine o'clock in the morning; naturally he don't go out after dark. So, as the weather is fit, and as he desires, he goes about during the day time on the grounds. I don't suppose he is actually out on the grounds more than six or eight hours."

Dr. Stevens described the insured's daily activities as follows:

"He would lie abed in the morning till after he had had his breakfast, get up and take his bath, get dressed along about nine o'clock, go out and walk around the grounds here for an hour or so, come back in, read the papers, talk to folks around the place that he might care to converse with, and keep that sort of thing up until nightfall, and perhaps

play cards a while in the evening and read and go to bed along about ten o'clock.''

When asked concerning Mr. O'Connell's physical condition since 1936, Dr. Stevens said: ''I don't know why you fix on '36 particularly, but Mr. O'Connell has never been physically ill since he has been here.''

Dr. Stevens was asked if Mr. O'Connell was perfectly normal mentally aside from his delusions and ideas of persecution, and answered: ''I think he is. It goes without saying that no man can be perfectly normal mentally that has delusions and has hallucinations.''

The policy in question herein contains two provisions for indemnity. Under both provisions the disease must cause total disability, and the patient must be visited regularly by a legally qualified physician. The two provisions differ in only one respect as to the conditions upon which indemnity is payable, and that is that the first provision contains a condition requiring confinement of the insured continuously and necessarily within the house while the second provision contains no such condition. Health and accident policies containing somewhat similar phraseology have frequently been before the courts for construction, and different results have been reached. The conflict in the authorities, more apparent than real, results chiefly from differences in the phraseology of the policies and in the facts. The facts in no two cases are exactly the same, and it is the facts in the particular case which must control. A reference to the following cases and annotations will reveal the apparently conflicting views of the courts: Rocci v. Massachusetts Accident Company, 222 Mass. 336, 110 N. E. 972, Ann. Cas. 1918C, 529; Reeves v. Midland Casualty Company, 170 Wis. 370, 174 N. W. 475, 959; Dunning v. Massachusetts Mutual Accident Association, 99 Me. 390, 59 A. 535; Richardson v. Interstate Business Men's Accident Association, 124 Kan. 685, 261 P. 565; Cooper v. Phoenix Accident & Sick Benefit Association, 141 Mich. 478, 104 N. W. 734; Garvin v. Union Mutual Casualty Company, 207 Iowa 977, 222 N. W. 25, 61 A. L. R. 633; Stewart v. Continental Casualty Company, 141 Wash. 213, 250 P. 1084, 49 A. L. R. 960; Massachusetts Protective Association v. Oden, 186 Ark. 844, 56 S. W. (2d) 425; notes in 49 A. L. R. 965 and 61 A. L. R. 642. An examination of these and many other cases

that might be cited shows that the courts are not in accord in their construction of clauses in insurance policies requiring the insured to be confined within the house in order to be entitled to recover disability benefits. But the general rule deducible from them seems to be that while the insured is not required to remain continuously within the four walls of his home under every circumstance, yet it must be a substantial confinement within the house by reason of the illness. Practically all of the cases hold that the term "confinement within the house" does not mean that the insured may not go out of the house occasionally for fresh air and exercise, especially when he in so doing acts under the advice of a physician. A provision such as the one in the present case requiring the insured to be "continuously and necessarily confined within the house" should be given a reasonable construction and all doubt should be resolved in favor of the insured, but this does not mean that the provision should be entirely abrogated and indemnity allowed merely because he is totally disabled and prevented from performing any act pertaining to his occupation.

The policy before us explicitly provides for two degrees of illness; one that continuously and necessarily confines the insured within the house, and one that does not so confine him although he is totally disabled. He is entitled to indemnity for both kinds of illness so long as he lives, but at different rates. The facts clearly bring the insured under the provisions of clause (i) of the policy and not clause (h). A contrary holding would abrogate clause (i) and amount to a rewriting of the contract. Appellee cites and relies upon the domestic cases, Metropolitan Plate Glass & Casualty Company v. Hawes' Ex'x, 150 Ky. 52, 149 S. W. 1110, 42 L. R. A., N. S., 700; Home Protective Association v. Williams, 151 Ky. 146, 151 S. W. 361, Ann. Cas. 1915A, 260; Republic Life & Accident Insurance Company v. Gambrell, 248 Ky. 63, 58 S. W. (2d) 219; Independent Life Insurance Company of America v. Downey, 255 Ky. 95, 72 S. W. (2d) 1008; and Mutual Benefit Health & Accident Association v. Burrow's Ex'x, 257 Ky. 808, 79 S. W. (2d) 222, in support of her contention that the insured is confined within the house within the meaning of the policy. In the Hawes Case, the insured occasionally sat on the veranda of his house during his illness, and it was held

that this was not a breach of the house confining clause of the policy. The court stressed the fact that the policy provided that the insured must be confined "to" the house and not "within" the house. The policy in that case did not provide any benefits for a nonconfining illness. In the Williams Case, the policy provided for the payment of benefits for the actual time the insured was "necessarily and continuously confined to bed and totally unable to follow his or her vocation." The policy did not contain a provision for any indemnity for a nonconfining illness. A verdict was returned against the insurer, and the judgment was reversed because the instructions given by the trial court entirely ignored the words "confined to bed" contained in the policy. The trial court was directed to instruct the jury that the insured was necessarily and continuously confined to bed if his sickness was such as would reasonably confine a person continuously to bed or substantially so confine him, though he may have been up at times to get fresh air or for other purposes. In the Gambrell Case, the insured was stricken with neuritis or rheumatism and remained continuously in his home for several months, after which he went to a number of hospitals for treatment under the advice of his physician. Part of the time he was in a plaster cast. He returned to his home after treatment at two or three hospitals, and, on the advice of his physician, he would leave his home and take short walks with the aid of crutches and then would return to his home and go to bed. It was held that an insured who is in such ill health that he must remain in his home under a physician's treatment, except when going to, or returning from, the office of a physician, or a hospital for treatment, is "confined within doors" and entitled to indemnity under a policy indemnifying against illness, and that under the facts, the question as to whether the insured was confined continuously within doors was one for the jury. In the Downey Case, the insured contracted tuberculosis, and, as a result of his illness, only went out into the air and sun and took short walks under the direction of his physician as a part of the treatment for the disease, and it was held that this was to all intents and purposes confinement within doors within the meaning of the policy. It is obvious that the facts in all of these cases differ materially from the facts in the instant case. In the Burrow Case, the policy contained a "confining ill-

ness" clause which provided for payment of $200 per month for disability resulting from disease which confined the insured continuously within doors and required regular visits therein by a legally qualified physician, provided the disease necessitated total disability and total loss of time. The nonconfining illness clause provided for the payment of $100 for not exceeding one month for disability resulting from disease which did not confine the insured continuously within doors but required regular medical attention, provided the disease necessitated total disability and total loss of time. Dr. Burrow, a practicing physician, was paralyzed by a cerebral hemorrhage to such an extent that he could not walk or use his left arm or leg. The indoor confinement caused him to become very nervous, suffer from loss of sleep, and to worry and brood over his condition. His physician prescribed, as a part of the treatment, that he should get out of the house and get fresh air and sunshine. Under the direction of his physician he spent outdoors about two hours in the morning and two hours in the afternoon of each day usually in an automobile with his wife or other members of his family. It was held that the evidence showed without contradiction that Dr. Burrow "did that in which he engaged on the advice of his physician as a part of the proper and necessary treatment of his illness," 79 S. W. (2d) 224, and that under these facts the Downey, Gambrell, and Hawes Cases were conclusive of the controverted issue in the case, and Dr. Burrow was entitled to indemnity under the confining illness clause of the policy. The decision in the Burrow Case approached the limits of liberal construction without actually abrogating the nonconfining illness clause of the policy.

The facts in the present case differ materially from the facts in the Burrow Case, and that case therefore is not controlling authority. It is insisted that Mr. O'Connell goes out of the sanitarium to get fresh air, sunshine, and exercise under the direction of his physician as a part of the treatment, but the evidence shows that his activities go far beyond that. He is free to come and go as he pleases so long as he does not leave the grounds, and he is not compelled to remain within the house for any particular time by reason of his illness. His physical health is good, and while, as stated by Dr. Stevens, he should have exercise, fresh air, and

sunshine not only to maintain his physical health but if possible to improve his mental condition, yet his condition does not limit him to such necessary healthful activities. He is permitted to and does go outside as frequently and for as long periods of time as he desires. The mere fact that because of some legal or moral restraint he does not leave the grounds of the sanitarium unless accompanied by an attendant does not alter the situation. The only case which is on all fours with the present case, so far as the facts are concerned, which has been cited, is Buske v. Federal Casualty Company, 200 Wis. 18, 227 N. W. 239, where a health and accident indemnity policy issued to Buske provided for the payment of illness indemnity at the rate of $80 per month "for the period during which the insured shall be necessarily and continuously confined within the house and therein regularly and personally visited by a legally qualified physician, and wholly and continuously disabled and prevented from performing any and every duty pertaining to his business or occupation."

The policy also contained a nonconfining illness clause providing for the payment of illness indemnity at the rate of $40 per month for a period not exceeding three consecutive months "during which the insured shall be regularly and personally attended by such physician and wholly and continuously disabled and prevented from performing any and every duty pertaining to his business or occupation."

It will be noted that these provisions are almost the same as the provisions in the policy before us except the payment of indemnity under the nonconfining clause was limited to a period of three months. In the Buske Case, the insured was duly adjudged to be a person of unsound mind and committed to a state hospital for the insane. During her confinement at the hospital, she was customarily taken into the open air on the grounds and within the lands and premises of the institution. She was not confined within the building at any time by reason of her physical incapacity. The trial court held that the insured's illness was a nonconfining illness under the terms of the policy, and limited her recovery to a period of three months. In affirming the judgment, the Supreme Court of Wisconsin said:

"The classification thus attempted is of degrees of sickness, and the confinement therein referred

to is, plainly, confinement induced by the character and degree of sickness; a physical incapacity to leave the house resulting directly from the sickness.

"In this case there was no such physical incapacity. The insured was at all times physically capable of leaving the house and moving about as she pleased. Her illness imposed no restraint upon her physical abilities. * * *

"In this case the confinement suffered by the insured was not a confinement due to natural causes. It was a legal, rather than a natural, confinement. Her confinement was not to the house, but to the premises of the institution. While the extent of her disability to pursue her usual occupation could not have been greater as the result of physical disability, nevertheless her disability does not fall within the contractual classification which entitles her to full indemnity. It plainly falls within that provision of the contract providing for partial indemnity."

Under the facts of the present case, the clause relating to nonconfining illness cannot be ignored. Under the pleadings and proof the appellee was not entitled to recover the indemnity provided by the confining clause (h) of the policy, but only the indemnity provided by the nonconfining clause (i).

The judgment is reversed, for further proceedings consistent herewith.

Whole Court sitting.

Judges Perry and Fulton dissenting.