WILLIAM O. ELMORE and FLORENCE C. ELMORE, Respondents,
v. PETER BUSSENO, Appellant.

Third Department, November 15, 1916.

Contract — Statute of Frauds — evidence as to confirmation by letter of
oral contract of sale.

The mere fact that a letter confirming an oral agreement for the pur-
chase of goods of over fifty dollars in value is written, and an envelope
prepared, with 50 or 100 other letters and envelopes of a similar
nature, the letters given to a manager and the envelopes to an office
boy, and the letter signed and handed to the office boy, accompanied
with the fact that it was the office boy's duty to put each letter in its
proper envelope, seal, stamp and mail it, is not sufficient evidence,
where the receipt is denied, of the mailing of the letter, so as to estab-
lish a memorandum of the contract within the meaning of the Statute
of Frauds, especially where the office boy is not produced, and neither
the manager nor the stenographer have any personal knowledge that
the letter of confirmation was mailed.

APPEAL by the defendant, Peter Busseno, from a judgment
of the Supreme Court in favor of the plaintiffs, entered in the
office of the clerk of the county of Otsego on the 24th day of
January, 1916, upon the decision of the court after a trial
before the court without a jury.

*Rogers & Sawyer* [*Erskine C. Rogers* of counsel], for the
appellant.

*Thompson & Van Woert* [*J. F. Thompson* of counsel], for
the respondents.

KELLOGG, P. J.:

September 30, 1913, plaintiffs' agent called upon the defend-
ant at his store at West Hebron, a little hamlet about six miles
from the railroad station, and they made an oral agreement by
which the defendant was to purchase of the plaintiffs four car-
loads of oats at a price exceeding fifty dollars. Plaintiffs'
agent immediately mailed to his firm at Oneonta, N. Y., a sale
slip signed by him, showing a sale to the defendant. The
stenographer in the plaintiffs' office in the usual course of busi-
ness, upon receiving a sales slip, would prepare a confirmation
with a carbon copy and an envelope with a return card upon it

directed to the purchaser. The confirmation and copy were put upon the desk of the manager for his signature; the envelope she delivered to the office boy. The manager would sign the confirmation, hand it to the office boy for inclosure and return the copy to the stenographer for filing. It was the duty of the office boy to put each confirmatory letter in its proper envelope which he had, stamp it and post the mail. The stenographer identifies the carbon copy as having been made by her. It is a fair construction of her evidence that aside from her familiarity with the defendant's name and address, and of the possession of the carbon copy, she has no recollection of the facts but assumes that this transaction took the usual course of business in the office. There were from 50 to 100 of such confirmations a day handled by the stenographer. The office boy is not produced and is not now in the plaintiffs' employ. The manager identifies the confirmation and his signature to it; and says he passed it on. Neither he nor the stenographer apparently has any knowledge that this confirmation was mailed, or the envelope stamped or the confirmation put in the envelope; they simply assume that the office boy did his duty. The defendant swears he never received or heard of the confirmation until about the time suit was brought. The evidence is not satisfactory that the confirmation was ever received by the defendant. If the mailing of a letter is proved it raises a presumption of its receipt; but the mere fact that a letter is written and an envelope prepared, with 50 or 100 other letters and envelopes, the letters given to the manager and the envelopes to an office boy and the letter signed and handed to the office boy, accompanied with the fact that it was the office boy's duty to put each letter in its proper envelope, seal, stamp and mail it, is not sufficient evidence, where the receipt is denied, of the mailing of the letter. It is more probable that the office boy neglected some one of the several details of his duty than to believe that the defendant has willfully sworn to an untruth.

Concededly the alleged sale is within the Statute of Frauds, and the defendant is not bound by it, unless he signed a memorandum of the contract.* The only memorandum contended

---

* See Pers. Prop. Law (Consol. Laws, chap. 41; Laws of 1909, chap. 45), § 85, as added by Laws of 1911, chap. 571.— [Rep.

for in this case is the letter of confirmation which the plaintiffs allege they mailed to the defendant and the defendant's letter of November 17, 1913, in which he complains that the plaintiffs are not treating him properly and are disregarding their obligations as to some Clover Leaf Dairy Stock and some hominy, in two separate orders, and then continues: "However, I have a future order standing in your house and you may cancel all and I will have nothing to do with you. We have not got along very well anyway." This, it is claimed, refers to and connects itself with the letter of confirmation and thus makes a memorandum signed by the defendant obligating him to meet the terms of the confirmation. This question need not now be considered, as we conclude that there is not sufficient evidence to show that the defendant received the letter of confirmation. The judgment should, therefore, be reversed as not sustained by the evidence, and a new trial granted, with costs to the appellant to abide the event.

All concurred.

Judgment reversed on law and facts and new trial granted, with costs to appellant to abide event. The court disapproves of the findings of fact that the letter of confirmation was received by the defendant and that a memorandum of the sale was signed by him.