FEDERAL ASBESTOS COMPANY, Respondent, vs. ZIMMER- MANN, Appellant.

*May 4—June 1, 1920.*

*Evidence: Proof of mailing letter: Customary routine of office:
Appeal: Prejudicial error.*

1. Proof that a letter addressed to defendant was dictated by plaintiff, coupled with proof of the custom in plaintiff's office with reference to mailing letters, is not sufficient to show mailing of a letter which defendant denied receiving, without some evidence to warrant an inference that the office customs were complied with in respect to the particular letter.
2. Where the testimony of the parties differed as to the substance of a conversation between them modifying a previous contract, error in admitting a copy of a letter purporting to have been written in confirmation of that conversation was prejudicial.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Reversed.*

The defendant in this case is a building contractor. The plaintiff, among other things, deals in hot and cold water pipe covering. The defendant had a contract for the construction of two school buildings and the Plankinton Hotel building in the city of Milwaukee. In the months of May and June, 1916, it was contracted between plaintiff and defendant that the former should furnish and apply certain hot and cold water pipe covering for said buildings. It appears that the pipe covering furnished by plaintiff was not acceptable to the owners of said buildings and that the contracts first entered into were modified. It is claimed by the plaintiff that by the terms of the modification it was to do the work of applying the pipe covering (and perhaps furnish some of the material) upon a *quantum meruit* basis, while defendant claims that the original contracts were modified by other express contracts. The question litigated was whether the work and services rendered and the material furnished by the plaintiff were to be compensated as per express contract or upon *quantum meruit.*

The case was tried in the civil court of Milwaukee county. The jury found that the work, services, and material were to be compensated upon a *quantum meruit* basis and assessed plaintiff's damages at $1,200. The civil court substituted $1,557.97 in place of $1,200 and rendered judgment in favor of plaintiff for the latter amount. From the judgment so rendered defendant appealed to the circuit court, where $1,200, the amount found by the jury, was substituted for $1,557.97, the amount found by the civil court. With such modification the circuit court affirmed the judgment of the civil court. From the judgment of the circuit court modifying and affirming the judgment of the civil court the defendant brings this appeal.

For the appellant there were briefs by *Howard P. Haberla,* attorney, and *Carl H. Juergens,* of counsel, both of Milwaukee, and oral argument by *Mr. Juergens.*

For the respondent there was a brief by *Nohl & Nohl* of Milwaukee, and oral argument by *Leo F. Nohl.*

Owen, J.   There was a mistrial of this case in the civil court for the following reason: The question litigated was whether the modification of the original contract called for continuance of work on the part of the plaintiff in applying certain pipe covering upon a *quantum meruit* basis or upon terms as fixed by an express contract.   Mr. Dieringer, an officer of the plaintiff company, testified that he had a conversation with reference to the three jobs with the defendant at the Plankinton Hotel the 3d of August, which was about the time that the plaintiff was stopped from furnishing further material for the Plankinton Hotel job under the original contract.   After having so testified, the carbon copy of a letter which Mr. Dieringer claimed to have sent to the defendant, dated on that day, upon the face of which it appeared to have been written either in confirmation or in pursuance of a conversation had between Mr. Dieringer and the plaintiff at the Plankinton Hotel on the morning of that day, was introduced in evidence.   Before its introduction, the defendant was called upon to produce the original of the letter.   He claimed he did not have the original thereof and had never received such a letter.   The introduction of the carbon copy in evidence was objected to on the ground that it did not appear that the original had ever been mailed. The sum and substance of the testimony which the trial court held constituted proof of mailing was this: Mr. Dieringer testified that he dictated the letter.   He did not testify that he had signed it or that he had seen it after it had been transcribed by the stenographer.   He testified that it was taken care of and sent out in the usual course of business, and that it was sent to *Mr. Zimmermann* in the usual course of business.   He was asked: "How do you know it was? *A.* It was mailed. *Q.* Did you mail it yourself? *A.* Why, no, I don't do any of our mailing; our mail is put in the pouch and then the collector calls for it. *Q.* How do you

know that this letter was put in the pouch, Mr. Dieringer? *A.* I don't know that." He testified that the method of handling correspondence in the office was as follows:

"I dictate my mail and then I sign it and then one of the stenographers takes it and mails it, which depends upon the time of the day; the evening mail is taken to the box, and the morning mail and noon mail is taken away by automobile delivery which takes care of the West Side manufacturers. After this letter was dictated by me it went through the usual course. For the last year or two the government has put in an automobile delivery up on the West Side, along on Thirtieth street and Twenty-ninth street, for all these manufacturing plants up there, and the morning mail and noon mail is taken by the automobile delivery, and of course the evening mail is taken out to the box. I take it, or one of the girls takes it, or Mr. Schoell takes it to the box. It just depends upon who is left in the office, he takes the mail. Our mail is stamped and the postage is prepaid. The address of the party is on the envelope, and the return address is on it in case it doesn't get there. Either myself or Mr. Schoell or the stenographer handles the letters after they are signed by the dictator, depends upon, and they are instructed when the letter is transcribed by them and signed by the dictator or the writer to put it in the mail pouch. Sometimes Mr. Schoell tends to that or the stenographer, it just depends upon; in the usual course the mail is put in the pouch. The afternoon mail is put in the pouch, and whoever goes out takes it along and drops it in the letter-box."

Upon this testimony the court held that the mailing of the letter had been sufficiently proved and admitted the copy in evidence. This we think was error. We know of no decided case which holds that mere dictation or writing of a letter, coupled with evidence of an office custom with reference to the mailing of letters, is sufficient to constitute proof of the mailing of such letter, in the absence of some proof or corroborating circumstance that the letter was at least placed where, in the ordinary course of business, it would be taken to the postoffice.

Thus in *Elmore v. Busseno,* 175 App. Div. 233, 161 N. Y.

Supp. 533, it was held that the mere fact that a letter confirming a sale was written and an envelope prepared, and such letter given to the seller's manager and signed by him and handed to an office boy, required to put each letter in its proper envelope and seal, stamp, and mail it, is not sufficient evidence of the mailing of the letter, where its receipt by the buyer was denied.

In *Flack v. Green,* 3 Gill & J. (Md.) 474, 480, plaintiff offered to prove by sundry witnesses that it was the invariable and uniform practice of that house to forward certain notices immediately upon receipt of them, and that they had no doubt from the course of their business that they had forwarded a certain notice to the defendant, but that they had no recollection upon the subject of forwarding the particular notice to the defendant; that from the general course of their business, and from the particular custom of their counting-house, in respect to such notices, they believed the notice in question had been duly transmitted to the defendant. Held insufficient to prove the fact of mailing.

In *Brailsford v. Williams,* 15 Md. 150, the court said:

"We think, however, that the evidence offered for the purpose of showing that the letter had been mailed, was not legally sufficient. The fact was to be found by the jury from the custom prevailing in the counting-room of the writer; but compliance with the custom had not been fully proved. The person whose duty it was to deposit letters in the postoffice should have been called, or his absence accounted for."

In *Dowagiac M. Co. v. Watson,* 90 Minn. 100, 95 N. W. 884, it was said, in effect, that from the proof of a custom with reference to the acceptance of contracts when received it does not follow that in the particular instance a letter of acceptance was in fact written and mailed.

In *Hastings v. Brooklyn L. Ins. Co.* 138 N. Y. 473, 34 N. E. 289, defendant produced and put in evidence a letter-press copy of a letter from its secretary to the insured. The

secretary testified that he wrote and signed the letter and gave it to an attendant to copy in the letter-press book; that it was brought back to him in a condition showing that it had been in the letter-press; that he inclosed it in a sealed envelope and put it in a basket in the office, where letters for mailing were usually placed. Defendant's porter testified that it was his business to take the letters from the basket and mail them; that he mailed all letters found in the basket, but had no recollection of seeing or handling this letter. Held, that the evidence was not sufficient to establish as matter of law that the letter was mailed, and a refusal to submit the question to the jury was error.

An examination of the reported cases where proof of custom has been held sufficient to establish the fact of mailing will show that there was testimony from which it might be inferred that the custom in the particular instance had in fact been followed.

In *Bell v. Hagerstown Bank*, 7 Gill (Md.) 216, the bank proved by the cashier that he had a distinct recollection of receiving certain notices, and that on the same day he sealed and directed them to the drawers and indorsers at their respective postoffices; that the bank had a regularly appointed messenger whose duty and practice it was to go to the bank daily about the closing hour, when the cashier delivered to him all letters and notices for the postoffice, and sometimes, when he left the bank before the messenger arrived, he placed such letters carefully upon the table, and there was a general understanding that the messenger was to take them to the postoffice. It was further proved by the teller of the bank that, when the cashier left the bank before the messenger arrived, the teller saw to it that the letters were taken by the messenger, or the messenger took the letters himself, from the table; that he had been exceedingly particular in this respect, and had no recollection of an instance when they had not been taken from the bank on the same day. The messenger further testified to the custom and to the

fact that he had never failed in his duty except on one occasion. This evidence was held sufficient to establish a compliance with the custom of the bank and to constitute proof of mailing.

A letter-press copy dated January 27, 1892, was offered in evidence in *McKay v. Myers,* 168 Mass. 312, 47 N. E. 98. Besides proof of the custom of the office from which the letter was sent, a letter from the defendant, under date of October 10th, contained indications that the letter referred to in it was that of January 27th. On this evidence the copy was held admissible.

The rule stated in 16 Cyc. 1068, note 50, is that "proof of custom in the sender's office whereby letters deposited in a particular place are taken by an employee and mailed by him, in connection with proof that the letter was so deposited and probably taken and mailed as usual, may support a presumption of due receipt." We think this states the rule as strongly as the authorities warrant. Manifestly the proof in this case did not meet this requirement. While we do not attempt to lay down any hard-and-fast rule with reference to the proof necessary to constitute mailing where custom or usage of an office is relied upon as a contributing element to such proof, we do hold that proof of the dictation of a letter, coupled only with proof of the custom of the office with reference to the mailing of letters, without any proof from which it may be inferred that in the particular instance the custom was complied with, does not constitute proof of mailing. It is conceded that the carbon copy of the letter introduced in evidence had a material bearing upon the vital issue in the case; and as upon that issue the word of one party was pitted against that of the other, we cannot say that the admission of this evidence did not have a controlling influence with the jury, and for the error in its introduction a new trial must be had.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings according to law.