18 Wis.2d 436 (1963)
HARRY CROW & SON, INC., and another, Appellants,
v.
INDUSTRIAL COMMISSION and others, Respondents.
Supreme Court of Wisconsin.
November 29, 1962.
January 8, 1963.
*439 For the appellants there was a brief by Kluwin, Dunphy, Hankin & Hayes of Milwaukee, and oral argument by John A. Kluwin.
For the respondent Industrial Commission the cause was argued by Beatrice Lampert, assistant attorney general, with whom on the brief was John W. Reynolds, attorney general.
WILKIE, J.
The sole issue to be determined on this appeal is whether Norbert Crow was, as the Industrial Commission expressly found, an employee under sec. 102.07 (4), Stats.,[1] of Harry Crow & Son, Inc., at the time of the accident.
*440 Although we have held that the ultimate determination of employer-employee relationship under the Wisconsin Workmen's Compensation Act is a question of law, there are questions of fact for the commission where there is room for dispute either as to facts or as to the inferences to be drawn from the facts.[2]
In the instant case the crucial questions on the issue of whether the deceased was an employee are questions of law, to wit: (1) Whether an unemancipated minor can be an employee under sec. 102.07 (4), Stats., and (2) whether the lack of a labor permit affects the status of the deceased as an employee under sec. 102.07 (4). The record amply supports a determination that the corporation employer had the control of the details of the work done by the deceased.[3] The fact that there was not an agreed wage rate nor a definite term of employment does not mean there can be no employment relationship.[4] The service undertaken by the deceased was of benefit to the corporation and was not in violation of any instruction to the contrary.[5]
Appellants contend that the deceased was a minor and unemancipated son of Gordon Crow, the vice-president and general manager of the ready-mix family corporation, and *441 that the son could not be an "employee" under any provision of the Wisconsin Workmen's Compensation Act. They rely on Prelipp v. Prelipp (1931), 203 Wis. 488, 234 N. W. 730, which is wholly inapplicable since it treats of the question of emancipation of a minor under common law and not under the terms of sec. 102.07 (4) of the act. It is immaterial under sec. 102.07 (4), Stats., whether a minor is emancipated, since sec. 102.07 (4) specifically provides that minors shall have the same power of contracting as adults. The pertinent question is not whether the minor son has been emancipated but whether there is an agreement of employment within the meaning of the act.[6]
The trial court traced the history of sec. 102.07 (4), Stats., and stated:
"Ch. 624, Laws of 1917, added to the definition of an employee the following underscored words: `. . . also including minors of permit age or over (who, for the purposes of sec. 2394-8, shall be considered the same and shall have the same power of contracting as adult employees), . . . .' Ch. 453, Laws of 1929, further amended sec. 102.07 (4) by striking the words `of permit age or over,' leaving minors with the same power to contract as adults. Curt v. Industrial Comm. (1937), 226 Wis. 16, 19, 275 N. W. 447."
The second contention of appellants is that since the particular employment here was of a nature requiring a work permit for a minor, and since no permit was applied for or issued here then the employment of deceased would be illegal and hence Norbert could not be held to be an employee.
In Thomas v. Industrial Comm. (1943), 243 Wis. 231, 10 N. W. (2d) 206, a minor was held to be an employee even though he did not have a work permit.
That the lack of a work permit here does not destroy the deceased's status as an employee is further emphasized by *442 the fact that sec. 102.60, Stats., specifically prescribes that the effect of illegal employment of a minor without a permit in permitted work may result in double benefits, while working without a permit in prohibited work may result in triple benefits.
Appellants' last contention is that public policy requires a reversal. But workmen's compensation is wholly statutory and questions on what should be the public policy concerning it are determined by the legislature.[7] The public policy here *443 has been expressed by the legislature under the provisions of sec. 102.07 (4), Stats., which specifically contemplate that a child serving an industry should have the benefits of the act, and the provisions of sec. 102.51 (7), which specifically provide for recovery by a parent where death comes in an industrial accident to his minor child whom he employs. It is the clearly expressed public policy of the Workmen's Compensation Act that if industry utilizes the services of minors, industry should shoulder the burden of compensation benefits in the event of their injury.
By the Court.Judgment affirmed.
NOTES
[1] "102.07 EMPLOYEE DEFINED. (4) Every person in the service of another under any contract of hire, express or implied, all helpers and assistants of employees, whether paid by the employer or employee, if employed with the knowledge, actual or constructive, of the employer, including minors (who shall have the same power of contracting as adult employees), but not including (a) domestic servants, (b) any person whose employment is not in the course of a trade, business, profession, or occupation of his employer, unless as to any of said classes, such employer has elected to include them. Item (b) shall not operate to exclude an employee whose employment is in the course of any trade, business, profession, or occupation of his employer, however casual, unusual, desultory, or isolated any such trade, business, profession, or occupation may be." (Emphasis ours.)
[2] Gant v. Industrial Comm. (1953), 263 Wis. 64, 69, 70, 56 N. W. (2d) 525; Enderby v. Industrial Comm. (1960), 12 Wis. (2d) 91, 106 N. W. (2d) 315.
[3] St. Mary's Congregation v. Industrial Comm. (1953), 265 Wis. 525, 62 N. W. (2d) 19; see also Scholz v. Industrial Comm. (1954), 267 Wis. 31, 64 N. W. (2d) 204; Employers Mut. Liability Ins. Co. v. Industrial Comm. (1939), 230 Wis. 670, 284 N. W. 548.
[4] Northern Trust Co. v. Industrial Comm. (1939), 231 Wis. 133, 140, 285 N. W. 339.
[5] Anderson v. Industrial Comm. (1947), 250 Wis. 330, 333, 27 N. W. (2d) 499.
[6] Curt v. Industrial Comm. (1937), 226 Wis. 16, 19, 275 N. W. 447.
[7] Julien v. Model Bldg., Loan & Investment Asso. (1902), 116 Wis. 79, 92 N. W. 561, where the court states, at page 91: "States are not tested by any rule of public policy. We look to the statutes as well as the unwritten law to determine what is and what is not public policy, and then we test acts inter partes by the result. If such acts are not directly the subject of legislation, we say they are contrary to public policy. When we leave constitutional limitations out of view, the will of the legislative branch of the government, when expressed, is the highest evidence of public policy. To judicially condemn its expressed will, when exercised within constitutional limitations, would be the plainest kind of usurpation."

Also see Borgnis v. Falk Co. (1911), 147 Wis. 327, 133 N. W. 209 (the decision upholding the Wisconsin Workmen's Compensation Act), where the court states, at page 351: "The term `public policy' is frequently used very vaguely, and evidently is so used here. It is, however, quite a definite thing. Public policy on a given subject is determined either by the constitution itself or by statutes passed within constitutional limitations. In the absence of such constitutional or statutory determination only may the decisions of the courts determine it. Hartford F. Ins. Co. v. C., M. & St. P. R. Co. 70 Fed. 201; S. C. 175 U. S. 91, 20 Sup. Ct. 33. This court has said: `We know of no ground upon which a constitutional legislative enactment can be rightly spoken of as contrary to public policy' (Julien v. Model B., L. & I. Asso. 116 Wis. 79, 92 N. W. 561), and the remark is certainly correct. When acting within constitutional limitations, the legislature settles and declares the public policy of a state, and not the court. True, where the legislature has not spoken on a subject and the courts in the course of their duty have declared the principle of common law applicable thereto, public policy may be truly said to be thus created; but any public policy thus created by the courts may be at any time reversed or changed by the legislature, provided it act within constitutional lines. The people, acting directly by means of a referendum, or through their representatives in constitutional conventions or legislative bodies, are the makers of public policy, and it is only when the people have failed to speak in these methods that the courts can be said to have power to make public policy by decision. A constitutional statute cannot be contrary to public policy,it is public policy."