OLSON, Appellant, v. SENTRY INSURANCE COMPANY, Respondent.

*January 30—February 27, 1968.*

For the appellant there were briefs and oral argument by *James C. McKenzie* of La Crosse.

For the respondent there was a brief by *Johns, Pappas, Flaherty & Harman* and *Daniel T. Flaherty,* all of La Crosse, and oral argument by *Daniel T. Flaherty.*

HANLEY, J. The following questions are presented on this appeal: (1) Was there a jury question as to whether or not Sentry mailed a proper cancellation notice to the plaintiff in compliance with the policy requirements on May 3, 1966, so as to cancel coverage under the policy effective May 18, 1966; (2) did the conduct of Sentry in its dealings with the plaintiff prior to its cancellation notice of May 3, 1966, amount to a waiver of the policy

requirement of timely payment of the instalment premiums; and (3) did the action of Sentry subsequent to plaintiff's accident of September 24, 1966, in commencing investigation of the accident through its adjuster constitute a waiver of its policy defense of cancellation for nonpayment of premiums?

In determining whether or not the trial court was in error in directing the verdict, the evidence is to be construed in the light most favorable to the party against whom the verdict was directed. *Wallow v. Zupan* (1967), 35 Wis. 2d 195, 150 N. W. 2d 329; *Milwaukee v. Bichel* (1967), 35 Wis. 2d 66, 150 N. W. 2d 419; *Baumgarten v. Jones* (1963), 21 Wis. 2d 467, 124 N. W. 2d 609.

The evidence concerning the mailing of the notice of cancellation consisted of the testimony of Mr. Howard W. Finnigan, at all times material the data processing manager at Sentry's home office in Stevens Point, Wisconsin. His responsibility included the mailings from his department, among which were the notices of cancellation. He testified that the procedure in mailing the notices of cancellation was to obtain proof of mailing in accordance with the provisions of federal law for that purpose and that the purpose in obtaining the proof is to secure evidence of mailing in order to satisfy the policy requirement concerning notice of cancellation. Under the procedure the cancellation notices are delivered to the post office in individual envelopes with a stamp affixed to each. A list consisting of the names and addresses of policyholders to whom such notices are to be sent is submitted with them, and the mailing is then "proved" by a postal employee who checks the envelopes against the list. A metered postage stamp is affixed to the list in the amount of the fee charged for the service, and the date is stamped thereon. Mr. Finnigan testified that such a cancellation list was prepared under his supervision on March 3, 1966, which included the name, address, and automobile policy number of the plaintiff. Affixed to the list was a metered postage stamp bearing a

cancellation date of March 3, 1966. (The policy was not canceled as a result of this notice, because the plaintiff made the required payment during the grace period.) A similar list was prepared on May 3, 1966, also containing the name, address, and automobile policy number of the plaintiff. Affixed to this list was a metered postage stamp with a cancellation date of May 3, 1966. There is no testimony that any premium payments were made on the automobile policy after May 3d except for a payment of $16.04, in response to a billing for an earned premium on the canceled policy. Mr. Finnigan further testified that Sentry's office procedure is so regulated that if a cancellation notice is sent and is subsequently returned undelivered, that would have appeared on company records. But the records show no undelivered mail addressed to the plaintiff was ever returned. Upon cross-examination Mr. Finnigan stated that he did not prepare the cancellation lists personally nor did he mail them. The messenger who mailed them was unavailable to testify.

Plaintiff denies receipt of the cancellation notice allegedly mailed on May 3, 1966. He attempts to cast doubt upon the fact of mailing by calling attention to the fact that no mention of cancellation appeared on the account summary introduced into evidence, nor did the insurance agent with whom plaintiff customarily dealt, J. I. Murphy, notify the plaintiff of the cancellation as was allegedly his custom.

According to the cancellation provision of the insurance policy, the insured must be notified of the cancellation for it to be effective. Proof of mailing, however, is conclusive of the notice issue.[1] That the fact of cancellation did not appear on the account summary and that Murphy had not notified the plaintiff of the cancellation do not rebut the testimony that mailing in fact occurred, nor

[1] Such a clause is not contrary to public policy. *Putman v. Deinhamer* (1955), 270 Wis. 157, 70 N. W. 2d 652.

does the denial of receipt aid the plaintiff's case, for proof of mailing does more than merely raise a presumption of receipt, the denial of which creates a jury issue, as would be the case absent the cancellation provision. *See*, for example, *Reeves v. Midland Casualty Co.* (1920), 170 Wis. 370, 174 N. W. 475, 174 N. W. 2d 959.

Thus, since plaintiff in no way controverted the defendant's evidence, the only question remaining is whether such evidence is susceptible to an inference that the notice of cancellation was not mailed.

In *Wisconsin Natural Gas Co. v. Employers Mut. Liability Ins. Co.* (1953), 263 Wis. 633, 58 N. W. 2d 424, the trial court directed a verdict against Liberty Mutual Insurance Company, holding that there was in effect a valid policy of automobile liability and collision insurance. Two post-office forms had been offered in evidence indicating that the post office had received on the date in question "one piece of ordinary mail" addressed to Ingbretson, Sr., and "one piece of ordinary mail" addressed to Household Finance Corporation. In granting judgment for the insurance company, the court stated at page 640:

"The evidence is, therefore, undisputed that the notices of cancellation were mailed on April 26, 1949, although there is testimony to the effect that the notices were not received by Ingbretson or Household Finance Corporation. However, Wisconsin adheres to the rule that where the provision for notice is stated in the contract and cancellation is to be accomplished by proof of mailing, this meets the demand. *Heimbecher v. Johnson,* 258 Wis. 200, 45 N. W. (2d) 610; 29 Am. Jur., Insurance, p. 265, sec. 285. . . ."

In *Putman v. Deinhamer, supra,* the employee who directed the preparing and sending of the notice, the employee who prepared the notice and the envelope, and the employee who inserted the notice into the envelope and stamped and sealed the envelope and delivered it to the mail clerk all testified they performed such acts, bas-

ing their testimony on the records they made and which were kept in the regular performance of their duties. Included in their records was a receipt from the post office indicating that a piece of mail was received from the witness who testified to mailing and also carbon copies of the notice and memoranda made at the time. The court held that the evidence was sufficient to support the jury's verdict that the notice was mailed. Distinguished was the holding in *Frank v. Metropolitan Life Ins. Co.* (1938), 227 Wis. 613, 277 N. W. 643, where the court held the evidence to be insufficient where the proof was simply that the notice was prepared for mailing and given to the mail boy; and there was no testimony by the mail boy or any proof that there was compliance with a usual office custom.

In the case at bar, the defendant is relying exclusively on evidence of the custom and practice of business, for Mr. Finnigan did not prepare the cancellation list of May 3, 1966, nor did he mail the notices. Evidence of this kind is admissible, for no one can be expected to have independent recall of all the correspondence mailed out by a business of any size. For the desired proof to be accomplished, however, the custom and practice must be shown to have been followed in each case. *Federal Asbestos Co. v. Zimmermann* (1920), 171 Wis. 594, 177 N. W. 881; *Frank v. Metropolitan Life Ins. Co., supra.*

While the individual who allegedly mailed the notices was not called upon to testify, there was proof that the practice of obtaining proof of mailing was followed in this instance. On the face of the cancellation list for May 3, 1966, was a metered postage stamp that was canceled. The list contained the name, address, and automobile policy number of the plaintiff, Charles Olson. We think this is sufficient to establish that a piece of mail was forwarded to him, the list functioning similarly to a receipt.

The proof of mailing procedure, however, is not sufficient to prove the contents of the mailing. In this respect,

Mr. Finnigan testified that the cancellation list in question, the one of May 3, 1966, came into being in the same fashion as did the one of March 3, 1966. In response to a question from the bench concerning the March cancellation list, Mr. Finnigan testified that the writing in black ink appearing on the face of the list—"P/L SBP cancellation listing 03–03–66"—was made by an employee at the time the list was typed out by the computer printer, and that two notices in a stamped envelope addressed to the plaintiff accompanied the list to the post office. There was similar writing in black ink on the face of the cancellation list of May 3, 1966; and facsimiles of the two notices allegedly mailed to the plaintiff on that date were introduced into evidence. Mr. Finnigan testified that he did not personally prepare or place the notices in the envelope. And while there is no reason to doubt that it is the regular business practice of the defendant to prepare and mail the notices at about the same time the cancellation list is prepared, there is no testimony that the business custom or practice was performed in this instance.

It is, of course, possible to infer that since the notation on the face of the cancellation list indicates the company's intent to send cancellation notices to the addressees appearing on the list and since an envelope was undeniably sent to each addressee and since the plaintiff made payment of $16.04 in response to a billing for an earned premium on the canceled policy, the envelope contained a notice of cancellation. These facts are not in dispute.

It is well settled that when facts are not in dispute but permit the drawing of different inferences therefrom, the drawing of one of such permissible inferences by the trier of fact is an act of fact finding and the inference so derived constitutes a finding of ultimate fact and not a conclusion of law. See *Gant v. Industrial Comm.* (1953), 263 Wis. 64, 69, 56 N. W. 2d 525; *Harry Crow & Son, Inc., v. Industrial Comm.* (1963), 18 Wis. 2d 436, 440, 118 N. W. 2d 841.

Since the undisputed facts permit the drawing of different inferences therefrom, we are of the opinion that the trial court was in error in deciding the issue of the notice of cancellation as a matter of law.

Plaintiff's second contention is that the defendant waived the requirement of timely payment of premiums since it had customarily allowed him additional time to pay when he was tardy. In this respect, Mr. Murphy testified that he had been familiar with the plaintiff and his wife for the past twenty to twenty-five years and that there were frequent cancellations on his policies. He would contact the plaintiff by telephone to remind him to pay, but most of the time the payments had already been made. He remembered that on one occasion when the plaintiff had not paid, the policy was canceled.

Mr. Murphy testified also that if there was a "lapse billing," he would get a copy and that fifteen days thereafter there would be a cancellation. The policyholder would be expected to mail in the premium upon receiving the notice. Tied in with this is Mr. Finnigan's testimony that a billing was sent along with the notice of cancellation and his testimony that cancellation notices were sent out on the plaintiff's policy on March 3, 1966, and on May 3, 1966, the effective dates of cancellation being March 18, 1966, and May 18, 1966—fifteen days thereafter. The inescapable inference is that cancellation notices were sent out effective fifteen days from the date of mailing, and that policyholders were given the interim in which to make the requisite payment. There is no testimony that the defendant ever accepted payments beyond the date of cancellation. This state of affairs also explains Mr. Murphy's equivocal use of the term "cancellation." When he spoke of frequent cancellations, he undoubtedly was referring to the notices of cancellation; and when he spoke of the cancellation after nonpayment, the reference was to an actual cancellation occurring after the "grace period." Plaintiff's second contention cannot be sustained.

Plaintiff's final contention is that defendant waived its defense of coverage by investigating the accident and participating in adjustment. The record is sparse on this point; the only investigation that appears on the record is an interview of the plaintiff taken by defendant's adjuster, Mr. Schellpfeffer, two days after the accident, at a time when he testified he had no knowledge of the coverage question. He further testified that he had not received an assignment to work on Mr. Olson's case until some time later. It is difficult to see how the company can be bound by his actions here. There were certain reports he later made to the company which were excluded from evidence tending to show that investigation was made, but the plaintiff did not brief any evidentiary questions on appeal.

We conclude there are no merits to plaintiff's contention of waiver of the requirement of timely payment of premiums nor to the plaintiff's contention that the defendant waived its defense of coverage by investigating the accident and participating in adjustment but that a new trial must be granted on the issue of the notice of cancellation. It necessarily follows that the judgment and order must be reversed and cause remanded for a new trial confined to the issue of notice of cancellation.

*By the Court.*—Judgment and order reversed; new trial granted.

HALLOWS, C. J. (*dissenting*). This court reversed on the ground the evidence is susceptible of an inference that the notice of cancellation was not mailed. While the court admits a letter was mailed, it finds an insufficiency of proof concerning the envelope's contents. I would affirm because I do not think the evidence shows the defendant insurance company sent an empty envelope to the plaintiff. The inference, which I consider unreasonable, is not sufficient to entitle one to go to the jury.

I am authorized to state Mr. Justice HEFFERNAN joins in the above dissent.