Cheshire,
No. 6224.

ARTHUR D. McLEAN

*v.*

PHOENIX ASSURANCE COMPANY OF NEW YORK & *a.*

ST. PAUL INSURANCE COMPANIES

*v.*

ARTHUR D. McLEAN & *a.*

ARTHUR D. McLEAN

*v.*

DAVID C. HAGGERTY & *a.*

April 28, 1972.

*Bell* and *Kennedy* (*Mr. Ernest L. Bell III* orally) for Arthur D. McLean.

*Wiggin, Nourie, Sundeen, Pingree & Bigg* and *William S. Orcutt* (*Mr. Orcutt* orally) for Phoenix Assurance Company of New York.

*Devine, Millimet, McDonough, Stahl & Branch* and *E. Donald Dufresne* (*Mr. Dufresne* orally) for St. Paul Insurance Companies.

LAMPRON, J, The main issue on this appeal is whether a comprehensive automobile liability policy issued to Gravel Trucking, Inc., by Phoenix Assurance Company of New York through its agent, Archie Slawsby Agency, Inc., had been properly and effectively cancelled prior to an accident in Nashua on February 7, 1966, for which coverage is sought.

Arthur D. McLean, driver of the automobile in collision with a payloader owned by Gravel brought suit against Gravel, William E. Sylvester, its major stockholder, and David C. Haggerty the operator of its vehicle. Phoenix entered no appearance for the defendants relying on a prior cancellation of its policy. Gravel and Sylvester were defaulted and damages in the amount of $36,851.89 were assessed against them. By February 6, 1968, these amounted to $40,933.50 and a judgment therefor remains unsatisfied. Phoenix later filed a motion to strike the default which was heard with the petitions for declaratory judgment hereinafter described and denied.

McLean brought a petition for declaratory judgment against Phoenix, Gravel and Sylvester seeking an adjudication that Phoenix was obligated to pay the outstanding judgment. The Trial Court (*Morris,* J.) found and ruled that Phoenix's policy had been cancelled prior to the accident and that it was not required to pay.

St. Paul Insurance Companies insured a private automobile of Haggerty the driver of the Gravel vehicle. It had brought a petition for declaratory judgment regarding its obligations in the matter. During the hearing it agreed that if Phoenix's policy did not afford coverage St. Paul was obligated to defend and pay any judgment rendered against Haggerty to the extent of the limits under the Financial Responsibility Law, then $10,000-$20,000.

The exceptions of the various parties to certain findings and rulings and to the trial court's decree were reserved and transferred.

The Phoenix policy in question became effective August 19, 1965. Its premium was $1666 which together with the premiums on other policies issued by Slawsby to Gravel totalled $3204.27. A down payment of $590.14 was made and a balance of $2806.40, which included a service charge and interest of $192.27, was financed by Gravel with E-Z Budget Plan, Inc. A note dated November 3, 1965 was to be paid in eight monthly installments of $350.80, the first payment being due December 1, 1965. The note provided that a failure to make any payment on the due date would constitute a default. Thereupon the unpaid balance on the note would become due at the election of the payee E-Z Budget and in such event the payee was expressly authorized and constituted attorney for the insured to cause cancellation of all policies designated in the note. However, the payee was not to cancel any policy for failure to make payment due on the note without first giving five days written notice to the insured. On November 9, 1965, E-Z paid Slawsby Agency the full amount of the premiums due it by Gravel in the amount of $3204.27. This amount did not include E-Z's charges of $192.27.

Condition 18 of the policy reads as follows: "Cancelation. This policy may be canceled by the named insured by surrender thereof to the company or any of its authorized agents

or by mailing to the company written notice stating when thereafter the cancelation shall be effective. This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

"If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro-rata. Premium adjustment may be made either at the time cancelation is effected, or as soon as practicable after cancelation becomes effective, but payment or tender of unearned premiums is not a condition of cancelation."

The first installment on the note due December 1, 1965 was not paid and on December 10 E-Z Budget sent Gravel a written notice that it was owed $350.80 plus a $1.00 late charge with a request that Gravel make payment within 5 days to avoid cancellation of its policy. No payment was made and on December 21, 1965, Donald P. Lavoie, an employee of Slawsby acting as agent for Phoenix sent Gravel a 10 day written notice of cancellation. On Gravel's promise to pay, Lavoie reinstated the policy on January 11, 1966. However, no payment was received and Lavoie for Phoenix sent a 5 day cancellation notice. Realizing it did not meet the policy requirement, Lavoie for Phoenix sent Gravel another written notice of cancellation dated January 24, 1966. It was addressed to Gravel at 16 Broad Street, Nashua and read in part as follows: "We hereby cancel our Policy No. [this policy] issued to Gravel Trucking Inc. on August 19, 1965 in accordance with the terms and conditions of the policy. You will, therefore, please take notice that at the expiration of Ten (10) days from the receipt of this notice, unless surrender thereof to us be sooner made the said policy will terminate and cease to be in force."

There was evidence that this notice and a copy thereof

were prepared at the Slawsby Agency under the direction of Lavoie who signed the original and delivered it on the same day to another employee of Slawsby together with a "penny receipt". It was the duty of this employee to place the notice in an envelope and take it to the post office. On the same day this employee returned the "penny receipt," now bearing a stamp of the Nashua post office with the date January 24, 1966, to Lavoie who attached it to the copy of the notice which was placed in the Slawsby files. The "penny receipt" was entitled "Post Office Department — Certificate of Mailing" and stated that a piece of ordinary mail was received from the Slawsby Agency in Nashua addressed to Gravel Trucking Inc., in Nashua. There was evidence that Slawsby made no other mailing to Gravel on that day. There was also testimony that a letter addressed to Gravel mailed in Nashua on January 24 would be delivered to it the next day. The original notice of cancellation was produced by Gravel at the hearing.

We hold that on the evidence the trial court properly found that the original of this notice of cancellation was mailed at the Nashua post office on January 24, 1966, and that it was properly delivered to Gravel on the next day January 25, 1966. *Wilson* v. *Insurance Co.,* 77 N. H. 344, 91 A. 913 (1914); *Indian Head Millwork Co.* v. *Glendale Homes,* 104 N.H. 312, 185 A.2d 259 (1962); *Olson* v. *Hardware Dealers Mut. Fire Ins. Co.,* 38 Wis. 2d 175, 156 N.W.2d 429 (1968); 2 Long, The Law of Liability Insurance ss. 15.03, 15.11 (1971). Consequently it could properly be found that the notice of cancellation was received by Gravel some 12 days before the date of the accident which occurred on February 7, 1966.

Phoenix concedes that the wording of this notice was controlling and that the 10 day period required by the policy for cancellation began to run when Gravel received it. *See* 17 Couch, Insurance *s.* 67:189 (2d ed. 1967); Annot., 64 A.L.R.2d 982, 1015 (1959); *cf. Gerard* v. *Massachusetts Bonding & c. Co.,* 106 N. H. 1, 11, 203 A.2d 279, 285 (1964). McLean maintains that the notice was ineffective because it did not state "the effective date and hour of cancellation" required by condition 18 of the policy. There was no statutory provision governing the form or content of the notice. *Cf.* RSA ch.

417-A (supp.) (1969). This policy required a 10 day notice which informed the insured positively and unequivocally that the policy was to cease to be binding upon the expiration of a specific time. 2 Long, The Law of Liability Insurance s. 15.08 (1971). We hold that the notice in this case met that requirement and we cannot accept McLean's argument that the history of prior attempted cancellations renders the notice of January 24, 1966, ambiguous in the face of its positive and unequivocal terms. 43 Am. Jur. 2d Insurance s. 405(1969).

McLean contends that the cancellation was improper because it bore the notation "Non-payment of premium." The trial court ruled that this notation did not mislead Gravel or affect the validity of the notice. This is in accord with the general principle of law that a condition, such as condition 18, gives the insurer the unqualified right to cancel the policy at any time by sending the required notice and that a reason for cancellation need not be given. Furthermore, if the notice states a reason for cancellation not supported by the facts the validity of the notice is not affected thereby. *Carden* v. *Liberty Mut. Ins. Co.,* 278 Ky. 117, 128 S.W.2d 169 (1939); *Gibbons* v. *Kelly,* 156 Ohio St. 163, 101 N.E.2d 497 (1951); 17 Couch, Insurance *ss.* 67:69, 67:70 (2d ed. 1967); 6 Appleman, Insurance Law and Practice *s.* 4185, at 723 (1942); *see American Motorists Ins. Co.* v. *Garage,* 86 N.H. 362, 169 A. 121 (1933). This is in the absence of contrary statutory provisions which was the case at the time.

McLean argues, however, that the above rule "is not in accord with the usual high morality of business in New Hampshire" and should not have been applied in the circumstances of this case. He maintains that Lavoie who sent the notice of cancellation was trying to serve three masters, E-Z Budget, Slawsby, and Phoenix, and that he breached his fiduciary relationship to Gravel. It is true that Lavoie was an employee of Slawsby and as such an agent of Phoenix. It is also true that he was treasurer and director of E-Z and held some of its debentures. This corporation was set up to finance insurance premiums for the Slawsby Agency, operated in the Slawsby offices and made a service and interest charge of $192.27 to Gravel in the note by which it financed its premiums.

Insurance premium financing by an agency set up for that purpose has become, within the last decade, an accepted and steadily growing method of operation in the insurance business. 19 Buffalo L. Rev. 656, 657 (1970); *see* N.Y. Bank. Law *ss.* 554-78 (McKinney 1971). Our legislature recognized this fact when in RSA 417-A:1 (supp.), Laws 1969, ch. 487 it defined nonpayment of premium which will warrant cancellation as failure of the insured to pay the premium on a policy when due "whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance plan or extension of credit".

In order to protect itself against default in payment, the financing agency usually obtains a power of attorney from the insured permitting it to effect cancellation of the financed insurance contract in the event the insured defaults in its installment payments. 19 Buffalo L. Rev. 656, 658 (1970). The note in this case gave E-Z such a power of attorney which could not be exercised without first giving Gravel a 5 day notice of its intention to do so. Upon cancellation on behalf of the insured, condition 18 of the policy provided that the earned premium was to be computed at "short rate" which is less favorable to the insured than the "pro rata" formula used when cancellation is by the insurer. The evidence shows the policy was cancelled "pro rata" on February 5, 1966, hence the trial court properly ruled that the cancellation was effective even though the 5 day notice was not given. The policy was not cancelled by E-Z under its power of attorney from the insured but by the insurer through its agent. *See Chamberlain* v. *Employers' Liab. Assur. Corp.,* 289 Mass. 412, 194 N.E. 310(1935).

Cancellations attempted to be made for nonpayment of premiums where financing agreements existed have been held ineffective under certain circumstances. In *Clark* v. *Employers Mut. Cas. Co.,* 90 F.2d 667 (8th Cir. 1937), the premium financing service was operated by the managing officers of the insurer who obtained from the insured the power to cancel the policy without his receiving a required statutory notice of cancellation and grace period. The following are cases in which under the circumstances found to have been prevailing notices of cancellation have been

declared ineffective. *United States Fidelity & Guar. Co.* v. *Stewart's Downtown Motors,* 336 F.2d 549 (9th Cir. 1964); *Allstate Ins. Co.* v. *Austin,* 225 F. Supp. 523 (D.C.W.D.S.C. 1964); *Maryland Cas. Co.* v. *Conner,* 200 F. Supp. 647 (D.C.E.D.S.C. 1961).

The trial court in the present case ruled, however, that on all the evidence E-Z's dealings with Gravel, or the fact that Gravel owed nothing to Slawsby or Phoenix, did not affect the validity of the notice of cancellation. *See Kaufman* v. *McLaughlin Co.,* 357 F.2d 283 (D.C. Cir. 1966); 43 Am. Jur. 2d Insurance *s.* 589 (1969). In ruling that the policy had been effectively cancelled and that Phoenix was not required to pay the judgment obtained by McLean, the court necessarily found that the evidence did not warrant a ruling that the cancellation procedure was improper, negligent or fraudulent as contended by McLean. The record before us does not demand that we set aside its finding and ruling that the policy was effectively cancelled before the accident.

In view of the result reached it is unnecessary to consider the denial of Phoenix's motion to strike off the default and be allowed to defend.

*Decree affirmed.*

All concurred.