CHRISTNACHT, Appellant, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Respondents.

*No. 256. Submitted under sec. (Rule) 251.54 April 10, 1975.—*
*Decided May 6, 1975.*
(Also reported in 228 N. W. 2d 690.)

446

For the appellant the cause was submitted on the brief of *Godfrey & Trump* of Milwaukee.

For the respondent Department of Industry, Labor and Human Relations the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Stephen M. Sobota,* assistant attorney general.

For the respondent Employers Mutual Casualty Company the cause was submitted on the brief of *deVries, Vlasak & Schallert, S. C.* of Milwaukee.

CONNOR T. HANSEN, J. On March 29, 1969, Thorpe sustained an injury while servicing an automobile in the course of his employment.

On October 11, 1968, Employers Mutual issued a policy of insurance to Christnacht covering workmen's compensation liability. Allegedly, this policy of insurance was canceled by Employers Mutual on December 20, 1968, for nonpayment of the premium. The policy in question provided the following with regard to its cancellation by the insurer:

> "*15.* **Cancelation** . . . . This policy may be canceled by the company by mailing to the insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. . . ."

Christnacht denied ever having received the notice. Robert Cascioli, an underwriter for Employers Mutual, testified that their file indicated that the notice had been mailed to Christnacht on November 18, 1968. It was undisputed that the notice of cancellation was signed by Cascioli, but Cascioli was unable to directly testify that the notice was mailed as he had not mailed it himself. Cascioli did testify as to the normal office procedures for mailing such notices and as to his knowledge of the procedures followed in this case. The insurer's file on Christnacht was introduced at the hearing before the ILHR Department examiner.

Clark Oil Company requires all of its stations to show evidence that insurance has been provided for general liability and workmen's compensation purposes. The practice of having a certificate of insurance issued to Clark was followed in this case. The certificate provided, in part:

"If any policy described above is canceled during its term or the coverage afforded by it is reduced, the insurer will mail notice ten days before the effective date of such cancellation or change to NAMED BELOW [Clark Oil and Refining Company]."

The hearing examiner for ILHR Department found from the evidence that Employers Mutual had mailed a notice of cancellation to Christnacht on November 18, 1968, and that the policy was, therefore, canceled and provided no coverage for the injury in question. Following a petition to review, the ILHR Department affirmed the findings and conclusions of the examiner. This order was subsequently affirmed by the trial court and Christnacht appeals.

### *Issues.*

The following issues are dispositive of this appeal:

1. Is there sufficient evidence to support the finding that Employers Mutual mailed a notice of cancellation to Christnacht?

2. Was it necessary for Employers Mutual to notify Clark Oil of the cancellation in order to make that cancellation effective as to Christnacht?

### *Mailing notice to Christnacht.*

Christnacht contends that there was insufficient evidence adduced at the hearing before the examiner to sup-

port the finding that Employers Mutual mailed a notice of cancellation to him.

The findings of the ILHR Department, in workmen's compensation cases, will be sustained on review by this court if there is any credible evidence to support those findings. *R. T. Madden, Inc. v. ILHR Department* (1969), 43 Wis. 2d 528, 547, 169 N. W. 2d 73; *Briggs & Stratton Corp. v. ILHR Department* (1969), 43 Wis. 2d 398, 403, 168 N. W. 2d 817.

In this case there is no direct proof of mailing by the person who actually mailed the notice of cancellation to Christnacht. However, as stated and relied upon by the trial court, proof of an office custom with respect to the mailing of letters, together with proof of facts or corroborating circumstances from which it may be inferred that the custom was complied with in the particular case, is also sufficient to support a finding of mailing. *Olson v. Sentry Ins. Co.* (1968), 38 Wis. 2d 175, 181, 156 N. W. 2d 429; *Frank v. Metropolitan Life Ins. Co.* (1938), 227 Wis. 613, 277 N. W. 643; *Federal Asbestos Co. v. Zimmermann* (1920), 171 Wis. 594, 177 N. W. 881; 30 Am. Jur. 2d, *Evidence*, p. 284, sec. 1119. Annot. (1923), 25 A. L. R. 9, 13, *et seq.*

Cascioli, the underwriter for Employers Mutual, testified as to the office custom with respect to mailing notices of cancellation. He testified that a four-part carbon pull-out form is prepared by the stenographer. The original is addressed to the insured. The form is separated before it is signed and a separate envelope is prepared for each of the original and two copies of the form that are to be mailed. The original form is then signed. The original is mailed to the insured, a copy is sent to the insurer's home office, a copy is sent to the insurance agent in the particular case, and the final copy is retained in insurer's district office file. The stenographer who prepares the forms places the en-

velopes to be mailed in her outgoing mail tray. The actual mailing is done by the mailing department.

At the bottom of the copy of the form retained by the district office, there appears a printed post-office department receipt form and an affidavit of mailing. The post-office receipt form contains a place for the post office to affix a stamp or postmark showing receipt of the item of mail.

At the time that the form is prepared, two separate card forms are also prepared giving notice of cancellation, one of which is addressed to the ILHR Department and the other to the Workmen's Compensation Rating Bureau in Milwaukee. The card forms are sent when the cancellation form is mailed, the card addressed to the ILHR Department being sent by registered mail.[1]

With regard to the issue of whether the standard procedures were followed in this case, the following undisputed facts were developed. Christnacht's file in the district office, which was introduced at the hearing before the ILHR Department examiner, contained only the copy of the cancellation form normally retained by the district office, not the original or the other two copies normally mailed. The file also contained a registered mail receipt indicating that the ILHR Department received its copy of the separate cancellation card form. Cascioli testified, without contradiction, that the Workmen's Compensation Rating Bureau received its cancellation card and that the home office and the insurance agency received their copies of the cancellation notice.

The post-office receipt form on the bottom of the district office copy of the cancellation notice was completely filled out but no stamp or postmark was affixed by the post office. The affidavit of mailing, also on the

---

[1] The notice to the ILHR Department must be sent by registered or certified mail. Sec. 102.31 (1) (a), Stats. There is no similar requirement as to the notice sent to the insured.

bottom of the district office copy, was completely filled out except that in the place of the signature for the affiant only the initials "SS" appeared. Cascioli testified that the initials were those of his stenographer, Sue Strange, who no longer worked for him and whose where-abouts were unknown. When questioned with regard to these forms, Cascioli testified that he did not know if completion of these forms was a part of their standard mailing procedure. Christnacht contends that the completion of these forms constituted a part of the established custom of mailing for Employers Mutual.

The trial court was of the opinion that this evidence created two conflicting but equally reasonable inferences. The hearing examiner could reasonably infer from the fact that only one copy of the cancellation notice remained in the district office file and that all other addressees received their copies, that the original had also been mailed and that the standard mailing procedures had been followed in this case. On the other hand, the missing post-office stamp or postmark on the post-office receipt form, together with the somewhat incomplete affidavit of mailing would permit a contrary inference.

Generally, the facts with regard to the procedures followed in this case are not in dispute. This court has held that when the facts are not in dispute but permit the drawing of different inferences, the drawing of one of such permissible inferences by the department is an act of fact finding and the inference so derived constitutes an ultimate fact upon which a conclusion of law may rest. *Kress Packing Co. v. Kottwitz* (1973), 61 Wis. 2d 175, 178, 212 N. W. 2d 97; *Olson v. Sentry Ins. Co., supra,* page 182; *Gant v. Industrial Comm.* (1953), 263 Wis. 64, 69, 56 N. W. 2d 525. While Christnacht correctly contends that there is evidence to

support a finding different than that made by the ILHR Department, this court has frequently stated:

" 'The question is not whether there is credible evidence in the record to sustain a finding the commission did not make, but whether there is any credible evidence to sustain the finding the commission did make.' " *R. T. Madden, Inc. v. ILHR Department, supra,* page 549, quoting from *Unruh v. Industrial Comm.* (1959), 8 Wis. 2d 394, 99 N. W. 2d 182.

We conclude there was sufficient credible evidence of the custom of Employers Mutual in mailing cancellation notices and that the custom was adhered to in the present case to support the finding that the notice of cancellation was mailed. The fact that Sue Strange was not called to testify is not controlling in view of the fact that her whereabouts were unknown and other circumstantial evidence of mailing was presented. *Cf. Olson v. Sentry Ins. Co., supra,* page 181. The existence of the carbon copy of the notice of cancellation without the original or other two copies in the district office file is credible evidence raising an inference that the original was sent in accordance with the customary mailing procedures. The receipt of the notice by the other addressees, when the office procedure was to prepare and mail all notices at the same time, raises the inference that the original notice was also mailed. Therefore, the trial court did not err in affirming the findings of the ILHR Department.

### *Notice to Clark Oil.*

Christnacht contends that the requirement contained in the certificate of insurance that Employers Mutual should notify Clark Oil of the cancellation of Christnacht's policy inures to his benefit and makes the attempted cancellation ineffective because Clark Oil was not so notified.

Peter R. McEnroe, house counsel for Clark Oil, testified that Clark Oil does not require that it be made an additional insured under a workmen's compensation policy, and was not made an additional insured under the policy in question. Thus, notice of cancellation to Clark Oil was not required by either paragraph 15 of the policy or by sec. 102.31 (1) (a), Stats.

Nonetheless, Christnacht contends that the agreement between Employers Mutual and Clark Oil, as reflected by the certificate of insurance, was part of the contract between Employers Mutual and himself. No authority is cited for this proposition and no direct testimony to that effect was adduced at the hearing. This argument is fully answered by paragraph 17 of the insurance policy in question which provides:

"17. **Declarations** By acceptance of this policy the insured agrees that the statements in the declarations are his agreements and representations, that this policy is issued in reliance upon the truth of such representations and that *this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance.*" (Emphasis added.)

The trial court concluded that the only possible theory which would support Christnacht's claim that notice to Clark Oil was a condition precedent to an effective cancellation of the policy vis-a-vis Christnacht, was a third-party beneficiary argument. The trial court was of the opinion, however, that the facts in this case did not support the view that Christnacht was a third-party beneficiary of the contract between Employers Mutual and Clark Oil.

This court has held that to succeed on a third-party beneficiary theory, it must be shown that the contract was entered into by the parties directly and primarily to benefit the third party. *Mortgage Associates v. Monona Shores* (1970), 47 Wis. 2d 171, 190, 177 N. W. 2d

340; *Winnebago Homes, Inc. v. Sheldon* (1966), 29 Wis. 2d 692, 699, 139 N. W. 2d 606.

Christnacht relies on the testimony of McEnroe to establish Christnacht's status as a third-party beneficiary. McEnroe testified as follows in response to a question concerning the reason why Clark Oil required that they be notified of the policy cancellation:

"*Q.* And what is the reason why Clark makes this requirement?
"*A.* It *behooves us* to insure the financial success of our dealers; and in the event of a cancellation of an insurance policy, it is our procedure to immediately notify the district office involved. They will have a territorial manager go out to the dealer, and the dealer either gets insurance coverage that day *or his lease is terminated.*" (Emphasis added.)

Based on this testimony, the argument that the requirement was intended to directly and primarily benefit Christnacht is without merit. Clearly, Clark made the requirement primarily to protect its own interests, not those of the dealer. This court has held that in order to rely on a third-party benefit theory, it must appear that the benefit to the third party must be more than merely incidental to the agreement. *Mortgage Associates v. Monona Shores, supra,* page 191; *Winnebago Homes, Inc. v. Sheldon, supra,* page 699. The benefit to Christnacht arising out of the agreement between Employers Mutual and Clark Oil, if any, was merely incidental to that agreement and the parties did not intend or specifically provide that the agreement should directly and primarily benefit Christnacht.

The judgment of the trial court finding that there is sufficient evidence in the record to sustain the findings of the ILHR Department and confirming the order of the ILHR Department is affirmed.

*By the Court.*—Judgment affirmed.